**2024 IL 129356**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 129356)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
EARL E. RATLIFF, Appellant.

*Opinion filed November 14, 2024.*

CHIEF JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Holder White and Rochford concurred in the judgment and opinion.

Justice Cunningham specially concurred, with opinion.

Justice O'Brien specially concurred, with opinion, joined by Justice Cunningham.

Justice Overstreet concurred in part and dissented in part, with opinion.

Justice Neville dissented, with opinion.

**OPINION**

¶ 1        Defendant Earl Ratliff entered an open plea to one count of robbery, and the trial court sentenced him to 15 years' imprisonment. On appeal, the defendant argued the trial court committed reversible error when it failed to comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before accepting his waiver of counsel. The appellate court rejected that argument and affirmed the defendant's conviction and sentence. 2022 IL App (3d) 210194-U. For the reasons that follow, we vacate the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 2                                    BACKGROUND

¶ 3        The defendant was indicted for robbery after he purportedly took by force a woman's purse containing a necklace, a watch, a cellular telephone, two wallets, and some currency. On April 24, 2019, he was arraigned. The trial court admonished him of the charge, the sentencing range, and his right to counsel. The defendant indicated that he wanted an attorney, and the trial court appointed a public defender. The trial court set a trial date and scheduled a hearing on any pretrial motions.

¶ 4        At that hearing on July 11, 2019, the defendant attempted to speak for himself, but the trial court instructed him to communicate through his attorney. Appointed counsel informed the court that the defendant wished to proceed *pro se*, and the defendant confirmed that intent. The court then advised him of the difficulties of representing himself:

       "Okay. Now, you have to understand something. Representing you on the particular matter in this [case] is not simply a matter of stand up, tell your side of the story. There's procedures and protocol that have to be followed. That gentleman right there is here to convict you. He's not here to help you. I'm not here to help you either. I just make sure you get a fair trial. I don't do research for you. He doesn't do research for you. We give you no special consideration in the jail or outside the jail. You're going to [be] held responsible for any type of discovery cutoffs, rulings, filings of motions. They are going to be you[r] responsibility.

*** Also, when you have an attorney representing you, they have freedom of access and movement and research availability to, you know, any type of matters that may need to be involved in. Also, you have the absolute right to represent yourself. I don't care one way or the other. If you discharge your lawyer, any claim about my lawyer didn't do something claim [*sic*] in the future is gone because you cannot claim ineffective [assistance] because you were representing yourself. So any mistakes or boo-boos that might happen in the future, they're all yours, no one else's. You can't blame anybody else."

¶ 5 When the trial court asked whether the defendant voluntarily chose to represent himself, the defendant said that his attorney had "threatened" him with a 22-year sentence and was unwilling to hear his side of the story or to defend him. Appointed counsel replied that he had a duty to convey offers from the State. The court granted the defendant's request to proceed *pro se* without admonishing him regarding the charge, the sentencing range, and his right to counsel, as required by Rule 401(a).[1]

¶ 6 The defendant subsequently filed several motions, which the trial court denied. On the day of trial, the defendant told the court that he wished to enter an open guilty plea. Before accepting the plea, the trial court admonished the defendant of the charge, the sentencing range, the term of mandatory supervised release, and collateral consequences, as required by Rule 402(a). See Ill. S. Ct. R. 402(a) (eff. July 1, 2012). The defendant indicated that he understood those matters. The trial court also told the defendant that he had "a right to have an attorney," and the defendant confirmed that he waived that right and wanted "to do this" himself. The court accepted his plea and entered a judgment order to that effect on November 19, 2019. On January 30, 2020, the court sentenced him to 15 years' imprisonment.

---

[1]Rule 401(a), titled "Waiver of Counsel," provides:
"Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
(1) the nature of the charge;
(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 402(a) (eff. July 1, 1984).

¶ 7        The defendant then filed a *pro se* "Appeals Motion to Withdraw Plead [*sic*] of Guilty," asking the trial court to reconsider his sentence or to vacate his guilty plea. At the hearing on that motion, the defendant indicated that he wanted a "private attorney" because he wanted a speedy trial. The trial court again advised the defendant that he was entitled to an attorney. The court later reappointed the same public defender to represent the defendant. At a status hearing, appointed counsel informed the court that the defendant did not want the court to vacate his guilty plea, but only to reconsider his sentence. Counsel filed such a motion, and the trial court denied it on May 7, 2021.

¶ 8        That day, the defendant filed a notice of appeal. Paragraph eight of the notice stated, "If appeal is not from a conviction, nature of order appealed from: MOTION TO RECONSIDER SENTENCE." More than six months later, on November 12, 2021, the defendant filed an amended notice of appeal in the trial court. The amended notice again specified that the defendant wanted to appeal the May 7 order. The defendant also filed in the appellate court a corresponding "unopposed" motion for leave to file an amended notice of appeal. In that motion the appellate defender stated, "In reviewing the record, counsel noted that the notice of appeal filed by the Clerk erroneously includes paragraph eight. Defendant is appealing his conviction and all rulings related thereto, which became final on May 7, 2021." The appellate court allowed that motion.

¶ 9        A divided panel of the appellate court affirmed the defendant's conviction and sentence. 2022 IL App (3d) 210194-U. The defendant's central contention was that his conviction should be reversed because the trial court failed to comply with the admonishment requirements of Rule 401(a) before he waived his right to counsel. The appellate court majority stated that the defendant forfeited review of the Rule 401(a) issue because he neither objected to the court's admonishment nor raised the issue in his postplea motions. *Id.* ¶ 11. The majority stated, however, that that issue is subject to plain error review because the right to counsel is so fundamental that the failure to properly issue Rule 401(a) admonishments amounts to a reversible second-prong plain error. *Id.* (citing *People v. Brzowski*, 2015 IL App (3d) 120376, ¶ 42).

¶ 10       The appellate court majority then shifted its attention to the plain error doctrine, stating that the first step in plain error review is to determine whether a plain error

- 4 -

occurred. *Id.* (citing *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007)). According to the majority, "[f]or a court to accept a plea of guilty entered by a self-represented defendant, the defendant must make a valid waiver of his right to counsel." *Id.* ¶ 12. Rule 401(a) requires a court to inform the defendant of and determine that the defendant understands the nature of the charge, the minimum and maximum sentence, and his right to appointed counsel before accepting his waiver of counsel. *Id.* The majority acknowledged that strict compliance with the rule is not required if the record indicates that the waiver was made knowingly and voluntarily and that the admonishment the defendant received did not prejudice his rights, either because the defendant already knows of the omitted information or because the defendant's degree of legal sophistication makes evident the defendant's awareness of the omitted information. *Id.* ¶ 13.

¶ 11 The appellate court majority reviewed the facts. Here, immediately before accepting the defendant's waiver, the trial court questioned the defendant about his education and prior involvement in the legal system. *Id.* ¶ 14. The trial court also extensively admonished the defendant about the disadvantages of self-representation. *Id.* However, the court failed to advise the defendant of the nature of the charge, the possible sentencing range, and that he had a right to appointed counsel. *Id.* Despite these omissions, the record showed that the court stated the potential minimum and maximum sentencing range for the offense less than three months before the plea. *Id.* The majority noted that the defendant's motions demonstrated that he knew the charge against him. *Id.* Thus, any deficiency in the court's admonition regarding the nature of the offense and sentencing was therefore harmless. *Id.* The majority concluded that, "[i]n light of the record, we cannot say that the defendant's waiver was rendered unknowing or unintelligent because the court provided an inadequate Rule 401(a) admonishment. Thus, the court's admonishment did not amount to a plain error." *Id.* ¶ 15.

¶ 12 Justice McDade dissented. She stated that, while the trial court made admirable efforts to dissuade the defendant from the unwise decision to represent himself, those efforts did not include the required admonishments of Rule 401(a). *Id.* ¶ 21 (McDade, J., dissenting). She noted that there was evidence in the record that the defendant suffered from mental illness and that he had drug use issues. *Id.* ¶ 22. Justice McDade insisted,

"There is no factual basis for the majority's assumption that defendant could or did remember something that had been told to him three months earlier and, therefore, no support for any assumption that giving the required admonishments prior to defendant's waiver of his right to counsel was excusable because it was unnecessary." *Id.*

¶ 13 This court allowed the defendant's petition for leave to appeal. See Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 14           ANALYSIS

¶ 15 Before we reach the merits in this appeal, we must address a jurisdictional issue. Though neither the defendant nor the State mentions jurisdiction in their briefs, a reviewing court has an independent duty to consider *sua sponte* issues of jurisdiction. See *People v. Smith*, 228 Ill. 2d 95, 104 (2008).

¶ 16 Illinois Supreme Court Rule 606(d) (eff. Mar. 12, 2022) states that a notice of appeal in a criminal case may be amended as provided in Rule 303(b)(5) (Ill. S. Ct. R. 303(b)(5) (eff. July 1, 2017)). Rule 303(b)(5) states that a notice of appeal may be amended without leave of court within the initial 30-day period to file an appeal. *Id.* The rule continues, "[t]hereafter it may be amended only on motion, in the reviewing court, pursuant to paragraph (d) of this rule." *Id.* Rule 303(d), in turn, offers an additional 30-day period in which the reviewing court may grant leave to file an amended notice of appeal upon motion "supported by a showing of reasonable excuse." Ill. S. Ct. R. 303(d) (eff. July 1, 2017). Once that additional 30-day period has lapsed, "the appellate court lacks jurisdiction to permit any further amendment of the notice of appeal." *Peters v. Herrin Community Unit School District No. 4*, 2015 IL App (5th) 130465, ¶ 22 (citing *Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.*, 137 Ill. App. 3d 550, 556 (1985)). Here, the defendant's motion for leave to file an amended notice of appeal was filed well after the additional 30-day period. The appellate court had no jurisdiction to allow that motion. The appellate court only had jurisdiction as conferred by the defendant's original notice of appeal.

¶ 17 Rule 303(b)(2), which governs civil appeals, provides that the notice of appeal must "specify the judgment or part thereof or other orders appealed from and the

relief sought from the reviewing court." Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017). This court has similarly observed, "In criminal cases, '[a] notice of appeal confers jurisdiction on an appellate court to consider only the judgments or parts of judgments specified in the notice.' " (Emphases omitted.) *People v. Bingham*, 2018 IL 122008, ¶ 16 (quoting *People v. Lewis*, 234 Ill. 2d 32, 37 (2009)).

¶ 18 The defendant's original notice of appeal specified that he was appealing the trial court's May 7, 2021, order denying his motion to reconsider his sentence. The appellate court had jurisdiction to review that order, but it did not do so. Instead, the appellate court reviewed the trial court's November 19, 2019, order entering judgment on the defendant's guilty plea—the order to which the appellate defender alluded in the untimely motion for leave to file an amended notice of appeal. The appellate court lacked jurisdiction to review that order.

¶ 19 This appeal, however, presents weighty issues concerning the finality of judgments pursuant to guilty pleas, the applicability of supreme court rules, the right to counsel, and the second prong of our plain error doctrine. In the exercise of our supervisory authority under article VI, section 16, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 16), we will address those issues to provide guidance to the bench and bar in future cases. See *McDunn v. Williams*, 156 Ill. 2d 288, 301-02 (1993) (stating that this court's supervisory authority is " ' "directed primarily to inferior tribunals" ' " and incidentally to litigants (emphasis omitted) (quoting *In re Huff*, 91 N.W.2d 613, (Mich. 1958), quoting 14 Am. Jur., *Courts*, § 265 (1938))).

¶ 20 The defendant argues that the trial court committed reversible error when it failed to admonish him pursuant to Rule 401(a) at the time the court accepted his waiver of counsel. There are three impediments that the defendant cannot overcome. First, the defendant waived any Rule 401(a) claim by pleading guilty. Second, he waived such a claim by failing to raise it in a postplea motion as required by Rule 604(d) (Ill. S. Ct. R. 604(d) (eff. July 1, 2017)). Third, even if the defendant's claim had not been waived, but only forfeited, his forfeiture would not be excusable as second-prong plain error because a Rule 401(a) violation is not akin to structural error.

¶ 21 This court has long held that "a constitutional right, like any other right of an accused, may be waived, and a voluntary plea of guilty waives all errors or irregularities that are not jurisdictional." *People v. Brown*, 41 Ill. 2d 503, 505 (1969)

(citing *People v. Dennis*, 34 Ill. 2d 219 (1966), and *People v. Smith*, 23 Ill. 2d 512 (1961)); accord *People v. Del Vecchio*, 105 Ill. 2d 414, 433 (1985); *People v. Peeples*, 155 Ill. 2d 422, 491 (1993); *People v. Jackson*, 199 Ill. 2d 286, 297 (2002) (stating that the defendant's decision to plead guilty is "quintessential waiver"); *People v. Sophanavong*, 2020 IL 124337, ¶ 33 ("defendant's act of pleading guilty forecloses any claim of error"); *People v. Jones*, 2021 IL 126432, ¶ 20.

¶ 22 In *People v. Townsell*, 209 Ill. 2d 543, 545 (2004), we stated unequivocally that the waiver of constitutional claims consequent to a guilty plea is distinguishable from a forfeiture of such claims that may be excused under our plain error doctrine as memorialized in Rule 615(a) (Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967)). We explained that

"invocation of Supreme Court Rule 615(a) is entirely out of place in this context. Rule 615(a) is concerned with waivers that result from failing to bring an error to the trial court's attention. Under that Rule, '[p]lain errors or defects affecting substantial rights may be noticed [on appeal] although they were not brought to the attention of the trial court.' [Citation.] In relation to a guilty plea, by contrast, 'waiver' refers to the ' "voluntary relinquishment of a known right." ' [Citation.] *** Rule 615(a) in no way speaks to waivers ***." *Townsell*, 209 Ill. 2d at 547-48.

¶ 23 Rule 604(d) works in tandem with the guilty-plea waiver principle. That rule provides,

"No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

The rule further provides that "[t]he motion shall be in writing and shall state the grounds therefor" and that "[u]pon appeal any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the

- 8 -

judgment shall be deemed waived." *Id.*[2] Rule 604(d) serves the systemic interest in the finality of judgments, while offering an important outlet that allows the defendant to avoid waiver of any constitutional claims by raising them in a postplea motion.

¶ 24     The defendant here pleaded guilty. Before accepting that plea, the trial court gave him the proper admonishments required under Rule 402(a) (see Ill. S. Ct. R. 402(a) (eff. July 1, 2012)), which included the nature of the charge, the sentencing range, and the consequences of a guilty plea. The trial court also informed the defendant that he had a right to counsel and confirmed that he wished to waive that right. The defendant never argued that his plea was less than knowing and voluntary. Any constitutional claims that arose before his plea, including any claim related to his right to counsel, were waived. See *Jones*, 2021 IL 126432, ¶ 20; *Sophanavong*, 2020 IL 124337, ¶ 33 ("Given that he waived all nonjurisdictional errors by pleading guilty, defendant should not be rewarded after standing silent all these years.").

¶ 25     Several months later, the defendant complied with Rule 604(d) by filing a *pro se* motion to withdraw his guilty plea in which he raised seven points. The defendant requested appointed counsel, and counsel later filed a motion to reconsider his sentence. In that motion, counsel contended that the trial court gave too much weight to the defendant's criminal history and not enough weight to his age, "mental issues," substance abuse issues, and rehabilitation potential. Neither the defendant's *pro se* motion to withdraw his guilty plea nor his motion to reconsider his sentence filed by appointed counsel mentioned any failure by the trial court to give the admonishments required by Rule 401(a). Under Rule 604(d), that issue was waived.

¶ 26     Rule 604(d) is unmistakably clear: Any issue not raised in a posttrial motion is "waived" on appeal. Though forfeiture may be a limitation on the parties, and not this court, we have never stated that the same is true of waiver, and with good

---

[2]We recognize that we have strayed from the text of Rule 401(a), commenting without rationale that the defendant's failure to raise an issue in a postplea motion is more properly termed a forfeiture than a waiver. *Sophanavong*, 2020 IL 124337, ¶ 22 n.1. Here, we rectify that misstep and track the language of what we previously called the "waiver rule." *People v. Stewart*, 123 Ill. 2d 368, 374 (1988) ("by its explicit terms, Rule 604(d) states that issues not preserved in a motion to vacate a guilty plea are waived").

reason. Forfeiture may be inadvertent—a failure to make a timely assertion of a right. See *Gallagher v. Lenart*, 226 Ill. 2d 208, 229 (2007). Waiver, by contrast, is never inadvertent because it is an intentional relinquishment of a right.

¶ 27    Moreover, "the rules adopted by this court concerning criminal defendants and guilty pleas are in fact rules of procedure and not suggestions." *People v. Wilk*, 124 Ill. 2d 93, 103 (1988). As such, "[i]t is incumbent upon counsel and courts alike to follow them." *Id.* This court in *Wilk* explained that our rules concerning guilty pleas, including Rule 604(d), "mesh together not only to ensure that defendants' constitutional rights are protected, but also to avoid abuses by defendants." *Id.* We continued:

> "Rule 604(d) has a purpose. That purpose is to ensure that before a criminal appeal can be taken from a guilty plea, the trial judge who accepted the plea and imposed sentence be given the opportunity to hear the allegations of improprieties that took place outside the official proceedings and *dehors* the record, but nevertheless were unwittingly given sanction in the courtroom. Rule 604(d) provides for fact finding to take place at a time when witnesses are still available and memories are fresh. [Citation.] A hearing under Rule 604(d) allows a trial court to immediately correct any improper conduct or any errors of the trial court that may have produced a guilty plea. The trial court is the place for fact finding to occur and for a record to be made concerning the factual basis upon which a defendant relies for the grounds to withdraw a guilty plea." *Id.* at 104.

See *People v. Walls*, 2022 IL 127965, ¶ 25 (stating that "Rule 604(d) is intended to ensure that trial courts have an opportunity to correct any potential errors in guilty pleas and sentences prior to appeal, while witnesses are available and memories are fresh," thereby "promoting the finality of judgments by preventing repeated or successive postjudgment motions that only prolong the proceedings" (citing *People v. Gorss*, 2022 IL 126464, ¶ 15)).

¶ 28    Because the defendant did not raise the trial court's Rule 401(a) violation in either his *pro se* motion to withdraw his guilty plea or in his motion to reconsider his sentence filed by appointed counsel, the trial court did not have the opportunity to address and correct any errors. Thus, the defendant's omission of that issue in his postplea motions waived consideration of it on review.

¶ 29 Another independent and equally important rationale supports our decision. Even if the defendant's Rule 401(a) claim had not been waived but only forfeited, that claim is not cognizable as second-prong plain error.

¶ 30 Certainly, the trial court did not substantially comply with Rule 401(a). At the defendant's arraignment, a judge advised him that he was charged with robbery, that the sentencing range was 6 to 30 years with 3 years of mandatory supervised release, and that he had the right to appointed counsel. At the defendant's next court appearance 11 weeks later, another judge prudently advised the defendant about the difficulties of proceeding *pro se* but did not admonish the defendant in accordance with Rule 401(a).[3]

¶ 31 Below, the appellate court majority brushed past the defendant's failure to raise the trial court's lack of admonitions "because the right to counsel is so fundamental that the failure to properly issue Rule 401(a) admonishments amounts to a reversible second-prong plain error." 2022 IL App (3d) 210194-U, ¶ 11. The appellate court majority cited *Brzowski*, 2015 IL App (3d)120376, ¶ 42, for that proposition. This is what *Brzowski* says:

> "The right to counsel is fundamental. [*People v. *]*Black*, 2011 IL App (5th) 080089, ¶ 24. Failure to issue Rule 401 admonitions amounts to plain error. *People v. Vazquez*, 2011 IL App (2d) 091155, ¶ 14; *Black*, 2011 IL App (5th) 080089, ¶ 23; *People v. Vernón*, 396 Ill. App. 3d 145, 150 (2009); *People v. Jiles*, 364 Ill. App. 3d 320, 329 (2006); *People v. Herring*, 327 Ill. App. 3d 259, 261 (2002); *People v. Stoops*, 313 Ill. App. 3d 269, 273 (2000)." *Id.*

¶ 32 The problem for the appellate court majority, and ultimately for the defendant in this regard, is twofold. First, *Brzowski* and the cases that it cites are distinguishable because they involve convictions following trials and not convictions after guilty pleas. Second, neither *Brzowski* nor the cases that it cites engage in a meaningful analysis of whether a clear Rule 401(a) violation that was not raised in a postplea or posttrial motion constitutes second-prong plain error.

¶ 33 In *Brzowski* and its supporting cases, the trial court violated Rule 401(a), and the defendants represented themselves at trial. The concern animating our second-

---

[3]We note that, prior to accepting his guilty plea, the trial court did inform the defendant of the three matters listed in Rule 401(a).

prong plain error jurisprudence is that the error may have undermined the fairness of the defendant's trial. See *People v. Herron*, 215 Ill. 2d 167, 186 (2005). That concern is manifest when the defendant has a trial and is absent when the defendant does not have a trial. Those are dramatically different scenarios with dramatically different implications. In the former scenario, when the defendant proceeds *pro se*, despite the lack of Rule 401(a) admonishments, and is later convicted, there is uneasiness that stems from the uncertainty whether the waiver of counsel affected the outcome. That uneasiness and uncertainty disappears when the defendant pleads guilty. Here, the defendant has never asserted that the trial court's Rule 401(a) violation contributed in any way to his decision to plead guilty, and he has likewise never asserted that his guilty plea was involuntary or unknowing.

¶ 34        Further, a close examination of the line of authority in *Brzowski* shows that the appellate court created the proposition that Rule 401(a) violations are second-prong plain error out of thin air in *People v. Robertson*, 181 Ill. App. 3d 760 (1989). There, the State argued that the defendant had "waived" the issue of inadequate Rule 401(a) admonishments. Without citing anything as support, the appellate court responded: "We decline to treat the matter as waived. The right to counsel is so fundamental it is not lightly deemed waived." *Id.* at 763.

¶ 35        That is the entire discussion in that case, and it spawned a legion of other "holdings." Calling a Rule 401(a) violation second-prong plain error is not the result of any principled analysis but a product of appellate court fiat, copied and pasted for now 35 years. Rule 401(a) is not an understudy of the right to counsel, and repetition is a poor substitute for reasoning.

¶ 36        *Robertson* and much of its progeny predate significant advances in our plain error jurisprudence, including *People v. Sebby*, 2017 IL 119445, which largely outlined the proper approach to first-prong plain error, and *People v. Moon*, 2022 IL 125959, which did the same for second-prong plain error. *Moon* controls here.

¶ 37        In *Moon*, the court faced the question of whether the trial court's failure to administer the jury oath, to which the defendant did not object, could be reviewed as second-prong plain error. The court observed that we have generally equated second-prong plain error with "structural error." *Id.* ¶ 28 (citing *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009)). A structural error is one that "necessarily renders a criminal trial fundamentally unfair or is an unreliable means of determining guilt

or innocence." *Id.* Citing several United States Supreme Court cases, the court posited that structural errors are a very narrow group that defies harmless error analysis. *Id.* That is, if a constitutional claim can be harmless beyond a reasonable doubt, it does not affect the fundamental fairness of a defendant's trial. *Id.*

¶ 38     "The structural errors identified by the Supreme Court include a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction." *Id.* ¶ 29 (citing *Washington v. Recuenco*, 548 U.S. 212, 218 n.2 (2006)). Those errors deprive defendants of basic protections, such that their trials are not a reliable vehicle for determining guilt. *Id.* (citing *Neder v. United States*, 527 U.S. 1, 8-9 (1999)).

¶ 39     The court continued, noting that the six structural errors identified by the Supreme Court are not necessarily a limitation on this court's determination of whether an error is cognizable under the second prong. *Id.* ¶ 30. However, "in analyzing whether an error is structural under the second prong of the plain error rule, we often look to the type of errors that the United States Supreme Court has identified as structural to determine whether the error being considered is comparable." *Id.*

¶ 40     The court examined the history of the jury oath and found that it was "firmly rooted in American jurisprudence" (*id.* ¶ 31), even before the first Illinois Constitution in 1818 (*id.* ¶ 34). In light of that "long and storied history," we concluded that the oath was an essential and universal element of a jury trial due to its important role in ensuring the defendant's right to an impartial jury. *Id.* ¶ 62. Thus, the failure to administer a jury oath was akin to structural error, and the defendant's failure to object was excusable under the second prong of our plain error doctrine. *Id.* ¶ 64.

¶ 41     In *People v. Jackson*, 2022 IL 127256, the court faced the question of whether the trial court's failure to poll the jury, to which the defendant did not object, could be reviewed as second-prong plain error. The court reinforced the approach in *Moon*, stating, "In determining whether an error is structural for purposes of applying the second prong of Illinois's plain error rule, we often look to the types of errors that the United States Supreme Court has found to be structural error and determine whether the error being considered is similar." *Id.* ¶ 30.

- 13 -

¶ 42     The court determined that jury polling is "a safeguard that is designed to help ensure that the defendant is afforded an important constitutional right," juror unanimity. *Id.* ¶ 33. However, even though polling is " 'rooted deep in our common law' " and "directly tied" to that right, polling is not coextensive with that right but rather subordinate to it. *Id.* ¶ 34 (quoting *People v. McGhee*, 2012 IL App (1st) 093404, ¶ 15). That is, jury polling is not a fundamental right guaranteed by either the federal or state constitution but a right bestowed only by judicial grace as "a safeguard for ensuring juror unanimity." *Id.* ¶ 53. We concluded that "[a]n error in the polling process is the type of error that is amenable to harmless error analysis. Therefore, forfeiture of the polling error can be excused under first-prong plain error standards, not under second-prong plain error standards." *Id.*

¶ 43     The question in this case becomes clear: Is a Rule 401(a) violation akin to structural error, so it may be reviewed as second-prong plain error, or is it akin to trial error, so it is subject to harmless error analysis and may be reviewed only as first-prong plain error? The answer, decidedly, is the latter.

¶ 44     The admonitions required under Rule 401(a) lack the historical pedigree of the jury oath and jury polling. The committee comments to Rule 401 note that the rule was adopted in 1967 and amended in 1970. See Ill. S. Ct. R. 401, Committee Comments (rev. Apr. 27, 1984). Further, while Rule 401(a) is "a safeguard that is designed to help ensure that the defendant is afforded an important constitutional right" (*Jackson*, 2022 IL 127256, ¶ 33), the rule is tangential to the constitutional right itself. Nothing in the federal or state constitutions requires any admonitions before a defendant may waive the right to counsel, which explains why we have repeatedly held that the trial court need only substantially comply with the rule. See, *e.g.*, *People v. Campbell*, 224 Ill. 2d 80, 84 (2006); *People v. Haynes*, 174 Ill. 2d 204, 236 (1996). The fact that substantial compliance is sufficient indicates that a Rule 401(a) violation, if pressed in a postplea or posttrial motion, would be subject to a record-intensive and prejudice-focused harmless error analysis. If such a violation rose to the level of structural error, strict compliance would be required. Stated differently, it is conceivable that a defendant could knowingly and voluntarily waive the right to counsel, proceed *pro se*, and still have a fair trial without the admonitions.

¶ 45　　Our recent decision in *People v. Marcum*, 2024 IL 128687, is instructive. In *Marcum*, the court addressed whether a statutory speedy trial violation to which the defendant did not object could be reviewed under the second prong. The court said no, observing that "the speedy trial statute was designed to implement the constitutional right to a speedy trial, but the constitutional right to a speedy trial is not coextensive with the statutorily prescribed period." *Id.* ¶ 39. Because the General Assembly specifically provided that a speedy trial violation may be waived, a violation of the statutory right to a speedy trial could not be second-prong plain error: "[T]he legislature would not have provided for waiver of the speedy trial statute if a violation of that statute alone resulted in an unfair trial or challenged the integrity of the judicial process." *Id.* ¶ 41.

¶ 46　　Similarly, we would not have held repeatedly that substantial compliance with Rule 401(a) is sufficient if strict compliance were necessary to protect the right to counsel. Because a Rule 401(a) violation is not akin to structural error, such a violation, if not raised in a postplea or posttrial motion, is not cognizable as second-prong plain error but only as first-prong plain error.[4]

¶ 47　　　　　　　　　　　　　　　　　CONCLUSION

¶ 48　　Because the appellate court did not have jurisdiction over the defendant's Rule 401(a) claim, it was without authority to reach the merits of that issue, and we accordingly must vacate its judgment. We hold, however, that the defendant waived any claim regarding Rule 401(a) when he pleaded guilty and he again waived any such claim when he failed to raise that issue in his postplea motions. Additionally, the trial court's Rule 401(a) violation was not second-prong plain error. For these reasons, we vacate the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 49　　Appellate court judgment vacated.

---

[4]To the extent that *Robertson* and any of its progeny are inconsistent with our holding in this case, they are overruled.

¶ 50    Circuit court judgment affirmed.

¶ 51    JUSTICE CUNNINGHAM, specially concurring:

¶ 52    I agree with and join Justice O'Brien's special concurrence. This court should not invoke its supervisory authority to review the merits of the defendant's challenge to his guilty plea or to review the reasoning of the vacated appellate court opinion. However, the majority does improperly undertake this review, and thus, the majority's decision on the merits now stands as binding law. Further, Justice O'Brien's special concurrence does not address the majority's analysis of the defendant's claim. Accordingly, because I disagree with much of the majority's analysis, I am compelled to respond with a special concurrence of my own.

¶ 53    Whether a Guilty Plea Waives Any Claim That There
Was No Valid Waiver of Counsel Prior to the
Entry of the Plea

¶ 54    The defendant, Earl Ratliff, contends that the trial court failed to timely admonish him in accordance with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) prior to the entry of his guilty plea. This failure, Ratliff alleges, meant that he never properly waived his sixth amendment right to counsel and, therefore, his guilty plea is invalid.

¶ 55    The majority rejects this contention. The majority holds that, by pleading guilty, Ratliff affirmatively waived his claim and, specifically, that by pleading guilty, Ratliff waived any "constitutional claims that arose before his plea, including any claim related to his right to counsel." *Supra* ¶ 24. I disagree.

¶ 56    The United States Supreme Court has long recognized that "a guilty plea to a felony charge entered without counsel and without a waiver of counsel is invalid." See *Brady v. United States*, 397 U.S. 742, 748 n.6 (1970). It follows, therefore, that a defendant may always argue on appeal that his *pro se* guilty plea was entered without a valid waiver of counsel because such an argument is a challenge to the validity of the plea itself. As the United States Supreme Court has stated, "when the judgment of conviction upon a guilty plea has become final and the offender

- 16 -

seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both *counseled* and voluntary." (Emphasis added.) *United States v. Broce*, 488 U.S. 563, 569 (1989).

¶ 57      The majority's holding in this case that a *pro se* guilty plea waives any argument regarding the right to counsel that preceded the plea, including any claim that there was no valid waiver of counsel prior to the entry of the plea, is squarely at odds with binding United States Supreme Court authority. Moreover, the majority's holding fails as a matter of simple logic: the majority is holding that, because Ratliff pled guilty, he waived his argument that his guilty plea was invalid. This reasoning does not withstand scrutiny.

¶ 58      In this case, Ratliff cannot prevail in his argument that he did not waive his right to counsel before pleading guilty because, as Justice O'Brien notes in her special concurrence, there was no Rule 401(a) error (*infra* ¶ 79) and Ratliff did, in fact, voluntarily forgo his right to counsel. However, contrary to the majority's conclusion, Ratliff did not waive his right to raise this argument by pleading guilty.

¶ 59                  Whether the Failure to Include a Claim in a
Postplea Motion Constitutes an Affirmative Waiver

¶ 60      The majority also holds that Ratliff affirmatively waived his claim that he did not, in fact, waive his right to counsel before pleading guilty because he failed to raise this contention in a postplea motion. According to the majority, the failure to include an issue in a postplea motion required by Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) operates as an affirmative waiver rather than a forfeiture or procedural default (*supra* ¶ 26), and therefore, the issue may not be pursued on appeal. This conclusion regarding the operation of Rule 604(d) is incorrect.

¶ 61      Rule 604(d) provides that

"[n]o appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

The rule further provides that "[u]pon appeal any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall be deemed waived." *Id.*

¶ 62 Although Rule 604(d) uses the term "waived," this court held in *People v. Sophanavong*, 2020 IL 124337, that the failure to comply with Rule 604(d) results in a *forfeiture*, not a true waiver. As this court explained:

"Over the years, this court has noted that the terms forfeiture and waiver have, at times, been used interchangeably, and often incorrectly, in criminal cases. *People v. Hughes*, 2015 IL 117242, ¶ 37; *People v. Blair*, 215 Ill. 2d 427, 443 (2005). Forfeiture is defined 'as the failure to make the timely assertion of [a] right.' *People v. Lesley*, 2018 IL 122100, ¶ 37; see also *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 320 n.2 (2008) (stating 'forfeiture is the failure to timely comply with procedural requirements'). Waiver, on the other hand, 'is an intentional relinquishment or abandonment of a known right or privilege.' *Lesley*, 2018 IL 122100, ¶ 36." *Id.* ¶ 20.

We further stated:

"Although *** Rule 604(d) has been referred to as the 'waiver rule' (*People v. Stewart*, 123 Ill. 2d 368, 374 (1988)), it is more appropriate to 'use "forfeited' to mean issues that could have been raised but were not, and are therefore barred' (*People v. Allen*, 222 Ill. 2d 340, 350 n.1 (2006))." *Id.* ¶ 22 n.1.

¶ 63 The majority now overrules *Sophanavong* in a footnote (*supra* ¶ 23 n.2). In so doing, the majority does not mention *stare decisis* or explain why *Sophanavong*'s reasoning was incorrect. Moreover, the majority does not explain how an *inadvertent* failure to include an issue in a postplea motion can be considered a waiver, *i.e.*, an intentional relinquishment of a known right. *Sophanavong* was not wrongly decided. The terms "waiver" and "forfeiture" *are* often used interchangeably. *Sophanavong* should not be overruled, and the majority errs in doing so.

¶ 64 Further, the majority does not acknowledge the scope of its holding. If, as the majority holds, the inadvertent failure to include an issue in a postplea motion results in an affirmative waiver rather than a forfeiture, *then plain-error review will*

*never apply in an appeal from a guilty plea*. Plain-error review only applies to forfeited claims, not ones that have been affirmatively waived. See *People v. Townsell*, 209 Ill. 2d 543, 547 (2004) ("Rule 615(a) is concerned with waivers that result from failing to bring an error to the trial court's attention," not true, affirmative waivers); *People v. Holloway*, 2019 IL App (2d) 170551, ¶ 44 (acquiescence to an error "does not raise a mere forfeiture to which the plain-error exception might apply; it creates an estoppel that precludes plain-error analysis"). This means that any argument that challenges the validity of a plea, no matter how serious, may not be raised on appeal if it is not preserved in a postplea motion.

¶ 65      To illustrate this point, consider the following: a defendant pleads guilty, but during the plea colloquy the trial judge gives the defendant incorrect sentencing information. No one in the trial court notices the error, and it is not raised in a postplea motion. According to the majority's reasoning, that error could not be argued as plain error on appeal, despite its clear impact on the voluntariness of the plea, because the failure to preserve the issue was an affirmative waiver, not a forfeiture. This result is illogical and unjust. It is also contrary to previous decisions from both this court and the United States Supreme Court that have applied plain-error review in appeals from guilty pleas. See, *e.g.*, *People v. Fuller*, 205 Ill. 2d 308, 322-23 (2002) (holding that the failure to give a defendant admonishments in compliance with Illinois Supreme Court Rule 402 (eff. July 1, 1997) may amount to plain error); *United States v. Vonn*, 535 U.S. 55 (2002).

¶ 66                            Plain Error

¶ 67      Despite determining that Ratliff twice waived his challenge to his guilty plea—first by pleading guilty and second by failing to include the issue in a postplea motion—the majority nevertheless proceeds to address whether Ratliff's claim may be reviewed as second-prong plain error. *Supra* ¶ 29. By the majority's own reasoning, this analysis is incorrect. As the majority itself acknowledges, plain-error review applies only to errors that have been forfeited, not ones that have been affirmatively waived. *Supra* ¶ 22 (citing *Townsell*, 209 Ill. 2d at 545). The majority thus contradicts itself by first finding that Ratliff waived his claim and then addressing it as plain error.

¶ 68    Further, "[t]he initial step in conducting plain-error analysis is to determine whether error occurred at all." *People v. Walker*, 232 Ill. 2d 113, 124 (2009). Here, no error occurred, thus eliminating any need for this court to determine whether second prong plain error was applicable to Ratliff's claim.

¶ 69    In a footnote, the majority appears to acknowledge that no error occurred in this case and that Ratliff was, in fact, properly admonished in accordance with Rule 401(a). *Supra* ¶ 30 n.3. Yet, in the same paragraph, the majority also states that "the trial court did not substantially comply with Rule 401(a)." *Supra* ¶ 30. The majority opinion is again contradictory. No error occurred in this case. The majority's discussion of whether second prong plain error applies to Ratliff's claim is therefore unnecessary and ignores established principles of law.

¶ 70    For these reasons, I specially concur.


¶ 71    JUSTICE O'BRIEN, specially concurring:

¶ 72    I agree with the majority that the appellate court lacked jurisdiction to consider defendant's challenge to his guilty plea and, therefore, the judgment of the appellate court must be vacated. I disagree, however, with the majority's determination to exercise this court's supervisory authority to review the correctness of the appellate court's order and the merits of defendant's challenge to his plea. Because I would vacate the appellate court's judgment without further comment beyond the jurisdictional discussion, I specially concur.

¶ 73    I do not agree with the majority's belief that this case warrants the invocation of this court's supervisory authority. This court is vested with "[g]eneral administrative and supervisory authority over all courts." Ill. Const. 1970, art. VI, § 16. Although our supervisory "authority is unlimited in extent and 'is bounded only by the exigencies which call for its exercise,' " it is to be "invoked with restraint." *Eighner v. Tiernan*, 2021 IL 126101, ¶ 29 (quoting *In re Estate of Funk*, 221 Ill. 2d 30, 97-98 (2006)). We invoke our supervisory authority "only in exceptional circumstances, where 'the normal appellate process will not afford adequate relief and the dispute involves a matter important to the administration of justice.' " *Id.* (quoting *People ex rel. Birkett v. Bakalis*, 196 Ill. 2d 510, 513 (2001)). We also invoke our supervisory authority when our " 'intervention is necessary to

keep an inferior court or tribunal from acting beyond the scope of its authority.' " *People v. Salem*, 2016 IL 118693, ¶ 21 (quoting *In re J.T.* 221 Ill. 2d 338, 347 (2006)).

¶ 74 None of the circumstances that would warrant exercising this court's supervisory authority are present in this case. Because the appellate court lacked jurisdiction to review defendant's challenge to his guilty plea, the appellate court's order is void. See *Municipal Trust & Savings Bank v. Moriarty*, 2021 IL 126290, ¶ 17 (a void order or judgment is one entered by a court without jurisdiction of the subject matter or the parties). This court has no compelling reason to address the appellate court's order or reasoning. See *Kelch v. Watson*, 237 Ill. App. 3d 875, 877 (1992) (when an order is vacated, it is as if the order had never been entered). The appellate court's judgment is without effect. Thus, contrary to the majority's assertion, there are no "weighty issues" (*supra* ¶ 19) presented by that order that demand this court's attention or that justify the exercise of supervisory authority. As the majority opinion demonstrates, the appellate process provided adequate relief because, even after reaching the other issues, the result is the same in that the judgment of the trial court is affirmed.

¶ 75 Further, by reviewing defendant's challenge to his guilty plea by invoking our supervisory authority, we are allowing defendant to proceed in direct contradiction of the requirements set forth in Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), which requires that, in order to seek review of a plea of guilty, a motion to withdraw the plea of guilty must first be filed in the trial court. When a defendant fails to file a motion to withdraw a guilty plea, the reviewing court cannot reach the merits of a challenge to the plea but, instead, must dismiss the appeal. *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34, 40 (2011) (citing *People v. Flowers*, 208 Ill. 2d 291, 301 (2003)).

¶ 76 Although defendant initially filed a *pro se* postplea motion seeking to withdraw his guilty plea, he subsequently abandoned that motion and, instead, filed only a motion to reconsider his sentence, which the trial court then denied. *Supra* ¶ 8. Defendant's deliberate and informed decision to abandon his motion to withdraw his guilty plea meant that the motion to reconsider his sentence was the only postplea motion before the trial court. *People v. Willoughby*, 362 Ill. App. 3d 480, 483-84 (2005). The trial court did not have a motion to withdraw the guilty plea

before it, and no ruling was ever entered on such a motion. The majority, by now reviewing the merits of defendant's challenge to his guilty plea in the absence of a proper postplea motion, has excused defendant from complying with Rule 604(d)'s motion requirements. I do not believe it is appropriate to review the merits of defendant's challenge to his guilty plea when he knowingly abandoned his motion to reconsider the plea.

¶ 77 Finally, even if the foregoing concerns are set aside, there is no reason to exercise this court's supervisory authority to address the merits of defendant's challenge to his guilty plea because it is clear that no error occurred in this case. Defendant argues that his *pro se* guilty plea was invalid and must be set aside because he did not waive his sixth amendment right to counsel before entering the plea. In support of this contention, defendant relies on Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). This rule states that a trial court shall not permit a defendant to waive counsel without first determining that the defendant understands the nature of the charge, the penalty he faces, and that he has a right to an attorney. Defendant argues that the trial court in this case failed to comply with Rule 401(a) in a timely manner before accepting his plea. Therefore, according to defendant, there was no waiver of counsel, and his guilty plea is invalid. However, this contention is refuted by the record.

¶ 78 At the outset of the guilty plea hearing in this case, in November 2019, and before accepting defendant's plea, the trial court informed defendant of the charge against him and the potential punishment he faced. Defendant stated that he understood these admonishments. Defendant was then informed by the trial court that he had the right to counsel, which he then expressly waived:

"THE COURT: All right. Mr. Ratliff, you have been representing yourself in this matter. Do you understand?

MR. RATLIFF: Yes.

THE COURT: All right. Now, you also have a right to have an attorney, but you waived that right and want to do this yourself?

MR. RATLIFF: Yeah."

¶ 79 In short, immediately before accepting defendant's guilty plea, the trial court addressed him in open court, informing him of and determining that he understood the three admonishments required by Rule 401(a). Thus, contrary to defendant's argument, there was no Rule 401(a) error with respect to his guilty plea. Accordingly, there is no need for this court to invoke its supervisory authority to address defendant's argument that the trial court's purported violation of Rule 401(a) rendered his plea invalid.

¶ 80 The resolution of this case should be brief and straightforward. This court should hold that the appellate court lacked jurisdiction, vacate the judgment of the appellate court, and then, at most, simply state there is no need to exercise supervisory authority to address defendant's arguments because no error occurred in this case. This case simply does not warrant the invocation of supervisory authority to review the merits of defendant's challenge to his guilty plea and the correctness of an appellate court order that has been vacated. Rather than disposing of this appeal on simple jurisdictional grounds, the majority provides an expansive advisory opinion, which offers various procedural grounds to resolve the appeal beyond the jurisdictional question. None of the independent grounds offered by the majority to affirm the judgment of the trial court are properly before this court.

¶ 81 JUSTICE CUNNINGHAM joins in this special concurrence.


¶ 82 JUSTICE OVERSTREET, concurring in part and dissenting in part:

¶ 83 With regard to the jurisdictional issue presented in this case, I agree with the dissent that the May 7, 2021, original notice of appeal was timely filed and conferred jurisdiction on the appellate court to consider the issues raised in the appeal. See *Village of Kirkland v. Kirkland Properties Holdings Co.*, 2023 IL 128612, ¶ 38. Ratliff's May 7, 2021, notice of appeal conferred jurisdiction on the appellate court to review the May 7, 2021, order denying the motion to reconsider sentence and all orders that were in the procedural progression leading to the denial of his motion to reconsider sentence. See *In re Marriage of Arjmand*, 2024 IL 129155, ¶ 27; *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23; *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435-36 (1979); *Foman v. Davis*, 371 U.S. 178, 181 (1962); *United States v. Rivera Construction Co.*, 863 F.2d 293, 298 (3d Cir. 1988); *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir.

1977). Accordingly, I disagree with the majority's conclusion that the appellate court lacked jurisdiction to review the circuit court's November 19, 2019, order entering judgment on the defendant's guilty plea. Thus, I find unnecessary the majority's decision to exercise supervisory authority under article VI, section 16, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 16).

¶ 84 Nevertheless, I agree with the majority's opinion in all other respects. I join fully in the majority's analysis on waiver.

¶ 85 For these reasons, I concur in part and dissent in part.

¶ 86 JUSTICE NEVILLE, dissenting:

¶ 87 The majority, before reaching the merits of the appeal, addressed the preliminary matter of jurisdiction, finding that the appellate court did not have jurisdiction to grant Ratliff leave to file his November 12, 2021, amended notice of appeal and finding that the appellate court did not have jurisdiction to review the November 19, 2019, order entering judgment on Ratliff's blind guilty plea. *Supra* ¶¶ 15-18. Despite the majority's holding that the appellate court did not have jurisdiction, the majority concludes that, because of the "weighty issues concerning the finality of judgments pursuant to guilty pleas, the applicability of supreme court rules, the right to counsel, and the second prong of our plain error doctrine," it will exercise its supervisory authority to provide guidance on these issues. *Supra* ¶ 19.

¶ 88 The majority vacates the judgment of the appellate court for lack of jurisdiction over Ratliff's Rule 401(a) claim (see Ill. S. Ct. R. 401(a) (eff. July 1, 1984)) and holds that, because Ratliff pled guilty, he waived any claim regarding Rule 401(a) and again waived such a claim when he failed to raise it in a postplea motion pursuant to Rule 604(d) (Ill. S. Ct. R. 604(d) (eff. July 1, 2017)). *Supra* ¶ 46. The majority also holds that the circuit court's failure to adhere to Rule 401(a) was not a structural error. *Supra* ¶ 46.

¶ 89 While I agree with the majority that a reviewing court has an independent duty to consider *sua sponte* issues of jurisdiction, I would reach a different result. Instead, I would find that Ratliff's May 7, 2021, notice of appeal conferred jurisdiction on the appellate court to review not only the May 7, 2021, order

- 24 -

denying the motion to reconsider sentence but also to review all orders that were in the procedural progression leading to the denial of the motion to reconsider sentence including (1) the January 30, 2020, sentencing order, (2) the November 19, 2019, guilty plea judgment order, and (3) the July 11, 2019, waiver of counsel order permitting Ratliff to proceed without counsel. See *People v. Bingham*, 2018 IL 122008 ¶ 16 (under Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967), the scope of appellate review is defined by the trial court's judgment and the proceedings and orders related to it). Therefore, because the appellate court had jurisdiction over the aforementioned orders, there is no need for this court to issue a supervisory order.

¶ 90    Additionally, I would hold that, because the record includes evidence that Ratliff did not knowingly and voluntarily enter a blind guilty plea, the plea may have been void and the circuit court's imposition of judgment on the uncounseled plea, without an evidentiary hearing concerning Ratliff's evidence he did not understand the plea, violated his right to due process. Consequently, the circuit court's imposition of judgment on Ratliff's uncounseled, blind guilty plea constituted reversible error. Further, because the court heard no evidence establishing that Ratliff entered the plea knowingly and voluntarily, the plea did not waive his Rule 401(a) claim. Accordingly, I respectfully dissent.

¶ 91                                  I. FACTS

¶ 92    Four dates frame the analysis: July 11, 2019, when Ratliff began representing himself in court; November 19, 2019, when the court accepted Ratliff's guilty plea; November 22, 2019, when Ratliff sent the court a letter telling the judge he did not understand the guilty plea proceedings; and January 30, 2020, when the court imposed its sentence on Ratliff.

¶ 93    On July 11, 2019, Ratliff's appointed counsel appeared before the circuit court and stated that Ratliff wished to proceed *pro se*. The circuit court then questioned Ratliff regarding his level of education and whether he had any mental disabilities. Ratliff stated that he completed ninth grade and that he has "a part of bipolar." Although the record reveals that Ratliff had a criminal history, Ratliff stated that he had no prior involvement in the legal system.

¶ 94    At the conclusion of the court's admonishments, Ratliff explained that he felt "forced" to proceed *pro se* because his attorney was "threatening" him with 22 years' imprisonment. After seeking clarity from defense counsel on Ratliff's claim, the court found that Ratliff was not forced to proceed *pro se*. Ratliff stated that he understood the court's admonishments, and the circuit court discharged Ratliff's counsel.

¶ 95    On November 19, 2019, the assistant state's attorney informed the judge that Ratliff wished to enter a blind plea[5] to the charge. Before accepting Ratliff's plea, the circuit court reminded Ratliff, who was still without counsel, that he had a right to an attorney but that he had previously "waived his right to counsel." The circuit court admonished Ratliff that he was charged with a Class 2 felony but, because of his criminal history, he would be sentenced as a Class X offender. The court also admonished him that he faced a term of imprisonment of 6 to 30 years. That same day, Ratliff entered a blind plea of guilty without the benefit of counsel, which the court accepted.

¶ 96    On November 22, 2019, three days after the circuit court accepted his plea and two months before sentencing, Ratliff sent a letter to the judge explaining that he did not understand his blind plea: "I was rushing so fast yesterday (in) court with you'll [*sic*] and I didn't understand it to good about the blind plea."

¶ 97    On January 30, 2020, while Ratliff was yet again without counsel, the circuit court entered an order and sentenced Ratliff to 15 years' imprisonment with a 3-year term of mandatory supervised release. After sentencing, on February 7, 2020, Ratliff filed a *pro se* motion to withdraw his guilty plea, which his reappointed public defender abandoned. On May 6, 2021, Ratliff's public defender filed a motion to reconsider sentence, which the circuit court denied in its May 7, 2021, order. Finally, on May 7, 2021, the clerk filed Ratliff's notice of appeal. Ill. S. Ct. R. 606(a) (eff. Mar. 12, 2021) (the clerk of the trial court, upon request, shall

---

[5]Case law indicates a blind plea is one that "involves no agreement between the defendant and the State." *People v. Lumzy*, 191 Ill. 2d 182, 185 (2000); see *People v. Diaz*, 192 Ill. 2d 211, 218 (2000) (an open or blind plea, is one where the defendant pleads guilty but does not receive any promises from the State); *People v. Evans*, 174 Ill. 2d 320, 332 (1996) (in an open or blind plea the defendant pleads guilty "without receiving any promises from the State in return").

prepare, sign and file a notice of appeal for the defendant).

¶ 98                                    II. ANALYSIS

¶ 99                                    A. Jurisdiction

¶ 100      Although I agree that Ratliff's November 12, 2021, amended notice of appeal was filed outside of the limitations period prescribed in Rule 303(d) (Ill. S. Ct. R. 303(d) (eff. July 1, 2017)) and was therefore untimely and void, the May 7, 2021, original notice of appeal was timely, and I believe it conferred jurisdiction on the appellate court to consider the issues raised in Ratliff's appeal. Therefore, I would find that the appellate court did have jurisdiction to consider the issues raised in Ratliff's appeal, including whether the November 19, 2019, order entering judgment on Ratliff's blind guilty plea was valid: knowing and voluntary.

¶ 101      While notices of appeal are jurisdictional, it is generally accepted that " 'a notice of appeal is to be liberally construed.' " *Village of Kirkland v. Kirkland Properties Holdings Co., LLC I*, 2023 IL 128612, ¶ 38 (quoting *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433 (1979)); *People v. Smith*, 228 Ill. 2d 95, 104 (2008); J. Timothy Eaton, *The Timely and Properly Filed Notice of Appeal*, 108 Ill. B.J. 26, 28 (2020) ("Courts liberally construe notices of appeal absent prejudice to the litigants involved."). " 'The purpose of the notice of appeal is to inform the prevailing party that the other party seeks review of the trial court's decision.' " *Village of Kirkland*, 2023 IL 128612, ¶ 39 (quoting *People v. Lewis*, 234 Ill. 2d 32, 37 (2009)). A notice of appeal should be considered as a whole, and it "will be deemed sufficient to confer jurisdiction on an appellate court when it fairly and adequately sets out the judgment complained of and the relief sought, thus advising the successful litigant of the nature of the appeal." (Internal quotation marks omitted.) *Id.*

¶ 102      A notice of appeal will also confer jurisdiction on the appellate court even if the order was not expressly mentioned in a notice of appeal, if that order was "a step in the procedural progression" and a necessary prerequisite leading to the judgment which was specified in the notice of appeal. *In re Marriage of Arjmand*, 2024 IL 129155, ¶ 27 ("[N]otices of appeal are to be liberally construed and *** they confer jurisdiction even if the order was not expressly mentioned in the notice of appeal,

if that order was a step in the procedural progression leading to the judgment which was specified in the notice of appeal." (Internal quotation marks omitted.)); *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23; *Burtell*, 76 Ill. 2d at 436 (1979) (a notice of appeal confers jurisdiction where an appellant seeks to contest an order that was "a preliminary determination necessary" for the outcome and was therefore "sufficiently closely related" to the judgment to justify review).

¶ 103    Federal courts have also reviewed notices of appeal to determine whether a particular order was a step in the procedural progression and a necessary prerequisite leading to the judgment specified in the notice of appeal. See *United States v. Rivera Construction Co.*, 863 F.2d 293, 298 (3d Cir. 1988) (where one order or judgment was a step in the procedural progression of a second order or judgment for which a timely notice of appeal has been filed, then an appeal from the latter judgment may be deemed to include the earlier judgment); *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977) ("It is true that if from the notice of appeal itself and the subsequent proceedings on appeal it appears that the appeal was intended to have been taken from an unspecified judgment order or part thereof, the notice may be construed as bringing up the unspecified order for review."); *Foman v. Davis*, 371 U.S. 178, 181 (1962) (where the notice of appeal failed to specifically state the order from which the party was appealing, but it was apparent that an unnamed order was being appealed from and it did not mislead or prejudice the respondent, the notice of appeal was effective).

¶ 104    Here, Ratliff's May 7, 2021, notice of appeal conferred jurisdiction on the appellate court to review the May 7, 2021, order denying the motion to reconsider sentence and all orders that were in the procedural progression leading to the denial of his motion to reconsider sentence. See *In re Marriage of Arjmand*, 2024 IL 129155, ¶ 27; *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23; *Rivera Construction Co.*, 863 F.2d at 298; *Burtell*, 76 Ill. 2d at 435-36; *Elfman Motors, Inc.*, 567 F.2d at 1254; *Foman*, 371 U.S. at 181. Those orders would include the January 30, 2020, judgment of sentence; the November 19, 2019, guilty plea judgment order; and the July 11, 2019, order permitting Ratliff to proceed *pro se* (waiver of counsel order).

¶ 105    Moreover, a notice of appeal confers jurisdiction to consider an unnamed ruling if the intent to address the unnamed ruling is apparent and there will be no prejudice

to the adverse party. See *People v. Patrick*, 2011 IL 111666, ¶¶ 22-27 (where the defendant failed to adequately identify the trial court orders appealed from but left blank the box indicating the appeal was " 'not from a conviction,' " the notice of appeal was sufficient to indicate that the defendant was appealing his conviction, and the record indicated no prejudice to the State); see also *United States v. Knowles*, 29 F.3d 947, 949-50 (5th Cir. 1994) (finding that the defendant's failure to indicate that he was appealing both his sentence and conviction did not " '*per se* preclude appealing' " his conviction because his intent to appeal both was apparent in his brief and was not prejudicial to the adverse party (quoting *United States v. Winn*, 948 F.2d 145, 154 (5th Cir. 1991))).

¶ 106    Ratliff has not forfeited review of any issues on appeal. Ratliff argues, both in his opening appellate court brief and in his opening brief before this court (to which the State responded), that the circuit court's failure to admonish him pursuant to Rule 401(a) before accepting his waiver of counsel "undermined the integrity and fairness of his guilty plea" or compromised the validity of his guilty plea and that he requests the court to vacate the guilty plea and remand the cause for a new trial. Additionally, Ratliff also argued in his petition for leave to appeal before this court (which we granted a year and a half ago on March 29, 2023) that the circuit court erred when it accepted his waiver of counsel without admonishing him pursuant to Rule 401(a), thereby effectively seeking review of the waiver of counsel order.

¶ 107    Because the May 7, 2021, original notice of appeal conferred jurisdiction on the appellate court to consider orders that were not specifically named in the notice of appeal but were prerequisites and procedural steps in the progression leading to the judgment named, the appellate court had jurisdiction to consider Ratliff's contentions of error with respect to the November 19, 2019, guilty plea order as well as the July 11, 2019, waiver of counsel order. See *In re Marriage of Arjmand*, 2024 IL 129155, ¶ 27; *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23; *Rivera Construction Co.*, 863 F.2d at 298; *Burtell*, 76 Ill. 2d at 435-36; *Elfman Motors, Inc.*, 567 F.2d at 1254; *Foman*, 371 U.S. at 181. Further, the record reveals no prejudice to the State by liberally construing his notice of appeal as an appeal of the guilty plea order, of the waiver of counsel order, and of all other orders in the procedural progression leading to the order denying his motion to reconsider sentence. It should be noted that the State addressed all of Ratliff's arguments and

it has never claimed that it suffered prejudice because Ratliff failed to specify orders in his notice of appeal.

¶ 108    Lastly, the majority relies on *Bingham*, 2018 IL 122008, ¶ 16, and *Lewis*, 234 Ill. 2d at 37, for the proposition that a notice of appeal confers jurisdiction on an appellate court in criminal cases " ' "to consider only the judgments or parts of judgments specified in the notice." ' " *Supra* ¶ 17 (quoting *Bingham*, 2018 IL 122008, ¶ 16, quoting *Lewis*, 234 Ill. 2d at 37). However, *Bingham* is distinguishable from the case on review. First, in *Bingham*, the defendant argued that the registration requirement of the Sex Offender Registration Act was unconstitutional as applied to him on substantive due process grounds and violated *ex post facto* principles. This court dismissed the appeal, finding that this was "not the proper forum for defendant to raise his claims and because an as-applied constitutional challenge may not be raised where it is litigated for the first time on review." *Bingham*, 2018 IL 122008, ¶ 25. We then vacated the portion of the appellate court's judgment that addressed the defendant's constitutional claims on the merits. *Id.* In reaching this conclusion, we reasoned that the defendant's claims of error were beyond the scope of review. In other words, the trial court's judgment did not include the claims of error asserted by the defendant. Specifically, the trial court's order did not require the defendant to register as a sex offender, and this requirement was not encompassed within any order of the trial court. *Id.* ¶ 17. Therefore, no judgment could be properly reviewed by the notice of appeal because the error defendant sought to appeal was beyond the scope of *any judgment* entered by the trial court.

¶ 109    By contrast, the May 7, 2021, notice of appeal in this case conferred jurisdiction on the appellate court because it was timely filed and sought review of the trial court's order denying Ratliff's motion to reconsider sentence, which necessarily calls into question all orders leading up to the denial of the motion to reconsider sentence. The majority's conclusions that the appellate court had no jurisdiction to consider the guilty plea order because it was not specifically named in the original notice of appeal has no merit. The amended notice of appeal was void, and it did not preempt the May 7, 2021, order because it was filed outside the limitations period in Rule 303(d). Therefore, it does not affect the analysis. More importantly, the majority employs a strict construction of the notice of appeal as opposed to a liberal one. *In re Marriage of Arjmand*, 2024 IL 129155, ¶ 27 ("[N]otices of appeal

- 30 -

are to be liberally construed and *** they confer jurisdiction even if the order was not expressly mentioned in the notice of appeal, if that order was a step in the procedural progression leading to the judgment which was specified in the notice of appeal." (Internal quotation marks omitted.)). The circuit court could not have entered the order denying the motion to reconsider sentence were there not a sentencing order or a guilty plea order or a waiver of counsel order. Therefore, construing the original notice of appeal liberally, the appellate court had jurisdiction to review the guilty plea and waiver of counsel orders.

¶ 110        Additionally, *Lewis*, 234 Ill. 2d at 37, does not support the conclusion reached by the majority, but instead it supports the conclusion that a notice of appeal should be liberally construed and is sufficient to confer jurisdiction where it fairly and adequately identifies the judgment complained of, such that the appellee is not prejudiced. In *Lewis*, we held that, although the defendant's notice of appeal listed the date of the denial of the defendant's motion to suppress, this error did not cause uncertainty as to the nature of his appeal because the notice expressly stated that he was appealing from no orders " 'other than conviction.' " *Id.* at 38. Therefore, we held that the "defendant's notice of appeal, considered as a whole and liberally construed, adequately identifies the complained-of judgment and informs the State of the nature of the appeal. Accordingly, the notice was sufficient to confer jurisdiction on the appellate court to consider this appeal." *Id.* at 39.

¶ 111        Like the notice of appeal in *Lewis*, the notice of appeal in this case, when construed liberally, adequately identifies the judgment complained of, informs the State of the nature of the appeal such that there is no prejudice, and permits the reviewing court to consider the legal issues in all unnamed orders that were a step in the procedural progression leading to the judgment named in the notice of appeal. *In re Marriage of Arjmand*, 2024 IL 129155, ¶ 27; *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23; *Rivera Construction Co.*, 863 F.2d at 298; *Burtell*, 76 Ill. 2d at 435-36; *Elfman Motors, Inc.*, 567 F.2d at 1254; *Foman*, 371 U.S. at 181. Because the appellate court had jurisdiction over the issues Ratliff raised in this appeal, we need not exercise our supervisory authority to provide guidance in future cases. Instead, we may simply reach the issues Ratliff raised in this appeal, which were argued in the petition for leave to appeal that this court granted a year and a half ago and which were thoroughly briefed by the parties before this court.

¶ 112    Therefore, I disagree with the majority and would find that the appellate court had jurisdiction, pursuant to the May 7, 2021, notice of appeal, to consider Ratliff's contentions of error related to his guilty plea order (whether the plea was valid or knowingly and voluntarily entered) and the waiver of counsel order (whether Ratliff was advised about his right to counsel on July 11, 2019, as required by Rule 401(a)).

¶ 113                                      B. Waiver

¶ 114    Next, the majority holds that Ratliff waived any argument that the circuit court committed reversible error when it failed to admonish him of his right to counsel pursuant to Rule 401(a) by pleading guilty and by failing to raise the argument in a postplea motion as required by Rule 604(d). *Supra* ¶¶ 20-21, 23. I do not believe Ratliff entered a knowing and intelligent plea; therefore, he was not required to file a Rule 604(d) postplea motion.

¶ 115    The United States Supreme Court held that, after a guilty plea, a defendant may not " 'raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.' " *Blackledge v. Perry*, 417 U.S. 21, 29-30 (1974) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). However, a defendant may attack "the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not 'within the range of competence demanded of attorneys in criminal cases.' " *Id.* (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). A guilty plea may be involuntary if the defendant does not understand that he is waiving constitutional rights or if the defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); see *United States v. Rossillo*, 853 F.2d 1062, 1067 (2d Cir. 1988) (where the court found, *inter alia*, that a failure to make an on-the-record determination that the defendant's plea was knowingly and voluntarily entered constituted reversible error). In addition to the guilty plea being voluntary, it must also be a knowing and intelligent act done with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).

¶ 116    Similarly, Rule 604(d) contemplates that a defendant will have received advice from counsel, as it provides that an attorney must "file with the trial court a

certificate stating that the attorney has consulted with the defendant *** to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty." Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Moreover, Rule 604(d) refers to Rule 402, which also assumes that admonishments are going to be given to a counseled defendant. See Ill. S. Ct. R. 402(d)(1) (eff. July 1, 2012) ("Prior to participating in the plea discussions, the trial judge shall admonish the defendant and inquire as to the defendant's understanding of the following: That the defendant's attorney has requested that the trial judge participate in the conference ***.").

¶ 117     The record establishes that Ratliff was *pro se* on November 19, 2019, and entered an uncounseled blind guilty plea that same day. Therefore, Ratliff did not have the advice of counsel—competent or otherwise—to ensure that his guilty plea was knowingly and voluntarily entered.

¶ 118     The majority maintains that Ratliff "never argued that his plea was less than knowing and voluntary." *Supra* ¶ 24. However, the record establishes that, on November 22, 2019, three days after the circuit court accepted his guilty plea and two months before sentencing, Ratliff sent a letter to the judge explaining that the blind plea proceedings were moving too quickly and that he did not understand the blind plea: "I was rushing so fast yesterday (in) court with you'll [*sic*] and I didn't understand it to good about the blind plea." Additionally, Ratliff stated on record that he has only a ninth-grade education, has a history of drug abuse, and has mental health disorders (namely bipolar disorder, anxiety-depression with suicidal tendencies, hearing voices, and "incompetency"). The record includes a list of medications prescribed for Ratliff, and the list includes psychotropic medications. The court made no inquiry at all into the possible effect of the medications on Ratliff's ability to knowingly and voluntarily plead guilty. Because the record includes unrebutted evidence that Ratliff did not knowingly and voluntarily plead guilty, the court should have held an evidentiary hearing on the validity of the plea before sentencing on January 30, 2020. The circuit court's acceptance of an uncounseled plea coupled with its failure to hold an evidentiary hearing to determine if Ratliff understood the plea constitutes reversible error. See *Brady*, 397 U.S. at 748; *Rossillo*, 853 F.2d at 1067; see also *People v. Brown*, 924 N.E.2d 782, 783-84 (N.Y. 2010) (reasoning that "[w]here, however, the record raises a legitimate question as to the voluntariness of the plea, an evidentiary hearing is required.").

¶ 119    In *United States v. Ulano*, 468 F. Supp. 1054, 1056 (C.D. Cal. 1979), Ulano, before sentencing, sought leave to withdraw his guilty plea in part because a strong pain reliever left him "not fully cognizant of what he was doing when he entered his plea" and his counsel did not render effective assistance. The trial court "refused to grant an evidentiary hearing" and denied Ulano leave to withdraw his plea. *Id.* at 1057. The United States Court of Appeals for the Ninth Circuit reversed the trial court's judgment entered on the plea and remanded for an evidentiary hearing on Ulano's claim he had not validly pled guilty. *Id.*; see *United States v. Ulano*, 625 F.2d 1383 (9th Cir. 1980).

¶ 120    Courts have the burden of protecting the fundamental rights of criminal defendants. See *Spano v. New York*, 360 U.S. 315, 321 (1959) (acknowledging the "burden which [law enforcement officers] share, along with our courts, in protecting fundamental rights of our citizenry, including that portion of our citizenry suspected of crime"). The majority's attempt to shift to Ratliff the burden of protecting his fundamental rights to due process and counsel is flawed and amounts to a breach of the court's duty and a violation of Ratliff's constitutional rights. The majority asserts the rule that "[a]ny constitutional claims that arose before his plea, including any claim related to his right to counsel, were waived. See *Jones*, 2021 IL 126432, ¶ 20[.]" *Supra* ¶ 24. This rule applies only to valid guilty pleas, pleas entered into knowingly and voluntarily. Because the record includes unrebutted evidence that Ratliff did not understand the guilty plea proceedings, he did not knowingly and intelligently plead guilty, and this failure of the circuit court to ensure Ratliff's understanding, alone, was reversible error. See *Rossillo*, 853 F.2d at 1067 (where the court found, *inter alia*, that a failure to make an on-the-record determination that the defendant's plea was knowingly and voluntarily entered constituted reversible error); *Brady*, 397 U.S. at 748 (waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with "sufficient awareness of the relevant circumstances and likely consequences"). Therefore, because the circuit court committed reversible error when it accepted Ratliff's uncounseled, unknowing plea, Ratliff did not waive any claims, including his claim that the circuit court committed reversible error when it failed, on July 11, 2019, to admonish him about his right to counsel as required by Rule 401(a).

¶ 121   It is axiomatic that criminal defendants have a constitutional right to effective assistance of counsel, and this right attaches at every critical stage of the proceedings, including when the defendant enters a blind guilty plea. *People v. Brown*, 2017 IL 121681, ¶ 25. A critical stage includes any proceeding where constitutional rights can be asserted or waived. *People v. Lindsey*, 201 Ill. 2d 45, 56 (2002). With respect to the pretrial phases, "the test [for a critical stage] utilized by the Court has called for examination of the event in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary." *United States v. Ash*, 413 U.S. 300, 313 (1973). In this case, it is clear that Ratliff required the aid of counsel during the critical stages of the proceedings. Instead, he selected a jury on November 18, 2019, without counsel; entered a guilty plea on November 19, 2019, without counsel; and was sentenced to 15 years in the penitentiary on January 30, 2020, without counsel. After the circuit court failed to admonish Ratliff pursuant to Rule 401(a) and accepted his invalid waiver of counsel, Ratliff filed a series of frivolous motions without counsel. Thereafter, Ratliff wrote a letter dated November 22, 2019, stating that he did not understand the November 19, 2019, blind plea—a peril that could have been averted had Ratliff been properly admonished about his right to counsel pursuant to Rule 401(a) on July 11, 2019, or received the benefit of counsel on November 19, 2019, at the time of the blind plea.

¶ 122   I would find that Ratliff's unknowing, unintelligent, and uncounseled blind guilty plea is akin to an uncounseled felony conviction after a trial and is unconstitutionally invalid. See *Gideon v. Wainwright*, 372 U.S. 335 (1963) (holding that all uncounseled felony convictions are constitutionally invalid). In *Gideon*, the United States Supreme Court reasoned:

> " 'The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding

hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.' " *Id.* at 344-45 (quoting *Powell v. Alabama*, 287 U.S. 45, 68-69 (1932).

The perils of an uncounseled blind plea of guilty, entered into unknowingly and unintelligently, are no less daunting than the perils of an uncounseled conviction after a trial—both defendants are stripped of their constitutional right to counsel, causing them to face the "danger of conviction because [they do] not know how to establish [their] innocence." *Id.* at 345 (quoting *Powell*, 287 U.S. at 69).

¶ 123    While I recognize that adherence to Rule 604(d) has been held by this court to be a condition precedent to the appeal of a guilty plea (*People v. Wilk*, 124 Ill. 2d 93, 107 (1988) ("a Rule 604(d) motion is a condition precedent to the appeal of a plea of guilty")), we must apply the rule only to valid guilty pleas. Ratliff was not required to adhere to Rule 604(d) in this case because unrebutted evidence in the record supports the conclusion that he entered his guilty plea unknowingly and involuntarily. See *McCarthy v. United States*, 394 U.S. 459, 466 (1969) (where the court reasoned that "because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts" and "if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void"); *State v. Torres*, 438 A.2d 46, 51 (Conn. 1980 ("A motion to withdraw a guilty plea which is filed before the imposition of sentence and which raises an issue regarding the voluntariness of the plea strikes at the heart of due process.").

¶ 124    I maintain that Ratliff's November 22, 2019, letter in which he stated that he did not understand the guilty plea proceedings, coupled with the evidence of his limited education (ninth grade), his history of drug abuse, his mental health disorders (namely bipolar disorder, anxiety-depression with suicidal tendencies, hearing voices, and "incompetency"), and his use of prescription psychotropic medications to treat the disorders, supports the conclusion that Ratliff did not enter into the uncounseled blind guilty plea knowingly, intelligently, and voluntarily. On November 22, 2019, when the court became aware that Ratliff claimed he did not understand the plea—months before sentencing—the court had an obligation to

hold an evidentiary hearing before sentencing on January 30, 2020, to ascertain whether Ratliff understood the blind plea. See *Brown*, 924 N.E.2d at 783-84 (reasoning that "[w]here, however, the record raises a legitimate question as to the voluntariness of the plea, an evidentiary hearing is required"). In this case, no further action was taken.

¶ 125    Additionally, I note that the majority of the cases relied upon by the majority assert that a voluntary plea of guilty waives all claims of error that are not jurisdictional, but these cases are factually distinguishable from this case. See *supra* ¶¶ 21-22. Most notably, the defendants in those cases, unlike Ratliff who was uncounseled, were represented by counsel at the time they entered a guilty plea. See *People v. Jones*, 2021 IL 126432, ¶ 6 (where, after the defendant entered a guilty plea, he filed a *pro se* postconviction petition arguing, *inter alia*, that his defense counsel was ineffective); *People v. Sophanavong*, 2020 IL 124337, ¶ 6 (where, at the plea hearing, defense counsel asked that the record reflect that the agreed-upon terms were against counsel's advice, but the defendant insisted on the accepted terms of the plea); *People v. Townsell*, 209 Ill. 2d 543 (2004) (where defendant filed a *pro se* motion to withdraw his guilty plea, alleging that his attorney coerced him into pleading guilty); see *People v. Brown*, 41 Ill. 2d 503, 505 (1969) (where defendant alleged that he pleaded guilty upon the advice of his attorneys); *People v. Dennis*, 34 Ill. 2d 219, 221 (1966) (where transcript of the proceedings at the time of the guilty plea reveal that the defendant stated that he had consulted with his attorney about entering a plea of guilty); see also *People v. Smith*, 23 Ill. 2d 512, 514 (1961) (where the transcript of the trial proceedings attached to the defendant's postconviction petition established that defendant's constitutional rights were not denied, as defendant was shown in open court, while represented by counsel, changing his plea from not guilty to guilty and that the trial judge explained the effects of his plea to defendant).

¶ 126    In *People v. Del Vecchio*, 105 Ill. 2d 414, 433 (1985), another case relied on by the majority, this court found that the defendant waived the issue of whether the circuit court erred in admitting evidence, at his sentencing hearing, of a guilty plea in a prior murder trial. Ratliff's case does not involve a guilty plea that Ratliff entered into during a previous trial.

¶ 127    Similarly, in *People v. Peeples*, 155 Ill. 2d 422, 491 (1993), this court held that the defendant waived review of the admissibility of his confession in a previous case because of his guilty plea. Like *Del Vecchio*, the guilty plea entered in *Peeples* was not for the crimes that formed the basis of the present litigation against Peeples. However, the uncounseled blind guilty plea that Ratliff entered into in this case was accepted after the circuit court failed to explain to Ratliff his right to counsel in accord with Rule 401(a).

¶ 128    Therefore, because the record establishes that Ratliff's uncounseled guilty plea was entered into unknowingly and unintelligently, the circuit court's acceptance of the uncounseled plea violated his constitutional rights and was void. *McCarthy*, 394 U.S. at 466. Finally, the court's acceptance of the plea was reversible error, and I would vacate Ratliff's guilty plea and remand the cause to the circuit court for a new trial. See *Brady*, 397 U.S. at 748; *Rossillo*, 853 F.2d at 1067.

¶ 129                                   C. Structural Error

¶ 130    The majority concedes that the circuit court did not substantially comply with Rule 401(a) but holds that the circuit court's failure to admonish Ratliff pursuant to Rule 401(a) did not amount to a structural error. *Supra* ¶ 28. The Supreme Court has held that where a court denies a defendant his right to counsel it amounts to a structural error. See *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 (2006) ("Such [structural] errors include denial of counsel ***." (citing *Gideon*, 372 U.S. 335); *United States v. Allen*, 895 F.2d 1577, 1580 (10th Cir. 1990) ("Acceptance of an invalid waiver in violation of a defendant's Sixth Amendment rights necessarily leaves him entirely without the assistance of counsel at trial." (Internal quotation marks omitted.)). In *Gonzalez-Lopez*, 548 U.S. at 150, the United States Supreme Court held that the "erroneous deprivation of the right to counsel of choice, 'with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as "structural error." ' " (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993)).

¶ 131    I would find that the circuit court deprived Ratliff of counsel by failing to admonish Ratliff about his right to counsel pursuant to Rule 401(a), thereby causing Ratliff to be left without counsel at critical stages of the criminal proceedings: during the jury selection proceedings, during the guilty plea proceedings, and

during the sentencing proceedings. These deprivations of counsel constitute structural error. Because we cannot measure the effect Ratliff's lack of counsel had on these proceedings, the circuit court's deprivations of counsel were not trial errors but structural errors.

¶ 132    I find our decision in *People v. Campbell*, 224 Ill. 2d 80, 84 (2006), instructive and the Montana Supreme Court's decision in *Halley v. State*, 2008 MT 193, ¶ 23, 344 Mont. 37, 186 P.3d 859, persuasive on this matter. In *Campbell*, this court held that there was no compliance with Rule 401(a), substantial or otherwise. *Campbell*, 224 Ill. 2d. at 84. The trial court allowed the defendant to proceed *pro se* without making any attempt to inform him of the nature of the charges, the range of possible penalties, or his right to counsel. *Id.* We concluded that, because there was no compliance with Rule 401(a), the defendant's waiver of counsel was invalid and his conviction could not stand. *Id.* at 85.

¶ 133    In this case, on April 24, 2019, at his arraignment, Ratliff was admonished of the minimum and maximum sentence he could face if convicted of robbery, that he had a right to an attorney, and that one would be appointed for him, months before he expressed a desire to waive his right to counsel. On July 11, 2019, months after his arraignment when he first expressed his desire to waive counsel, he was advised on the perils of proceeding without an attorney but was not informed, as required by Rule 401(a), of the charge against him, of the minimum and maximum sentencing range, and that he was entitled to counsel and the appointment of counsel if he was indigent. See Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 134    Although attempts were made to admonish Ratliff, the first attempt was made during his April 24, 2019, arraignment—several months before he expressed his desire to proceed *pro se*. The second attempt was made on July 11, 2019, after he expressed a desire to proceed *pro se*, but the court's admonishments failed to satisfy the requirements of Rule 401(a) by failing to (1) inform him of the charge against him, (2) the minimum and maximum sentencing range, and (3) that he was entitled to counsel and, if indigent, the appointment of counsel.

¶ 135    Requiring Ratliff to remember admonishments he was given on April 24, 2019, several months before he first expressed a desire on July 11, 2019, to waive his right to counsel, can hardly be considered substantial compliance with Rule 401(a), and it calls into question whether Ratliff knowingly and intelligently waived his

right to counsel. Much of the evidence concerning the validity of the guilty plea also supports a finding that Ratliff did not validly waive his right to counsel. Ratliff has only a ninth-grade education, a history of alcohol and drug abuse, a history of "memory loss or blackouts," and a need for prescription psychotropic medications. This, coupled with his assertion that he felt "forced" to proceed *pro se* because his counsel "threatened him" with a 22-year sentence as well as the litany of unsuccessful, frivolous motions he filed throughout the pretrial and postplea proceedings, demonstrates Ratliff's confusion about whether he should have proceeded *pro se* or with counsel and casts great doubt on whether Ratliff's waiver of his right to counsel was knowing and intelligent. Admonishing Ratliff, with his limited education and drug and alcohol addiction, months before his actual request to proceed *pro se*, is tantamount to no admonishment at all, especially when the subsequent admonishments did not comply with Rule 401(a) and Ratliff's demonstrated behavior suggesting confusion. It should be noted that Ratliff selected a jury on November 18, 2019, he pled guilty one day later on November 19, 2019, and three days later, he told the court he did not understand what he was doing when he entered the blind guilty plea. Based on the circumstances of this case, I cannot find that Ratliff knowingly and intelligently waived counsel or that the admonishments, which did not provide all the information prescribed in Rule 401(a), did not prejudice his rights. Therefore, I would find that the circuit court not only failed to substantially comply with Rule 401(a) but it failed to comply at all at the time Ratliff expressed a desire to waive counsel on July 11, 2019.

¶ 136    In *Halley*, the Montana Supreme Court found that the circuit court erred by allowing the defendant to proceed *pro se* without making an inquiry into whether the defendant was waiving his right to counsel knowingly and voluntarily. *Halley*, 2008 MT 193, ¶ 21. The *Halley* court further held that, because the defendant entered guilty pleas without a valid waiver of counsel, the guilty pleas were invalid because he was "deprived of his constitutional right to counsel during critical stages of the criminal proceeding." *Id.* ¶¶ 22-23.

¶ 137    This is precisely what occurred in this case. The circuit court accepted Ratliff's invalid waiver of counsel when it accepted his waiver without first admonishing him—at the time he first expressed a desire to waive counsel—pursuant to Rule 401(a) to ensure that his waiver was knowingly and intelligently entered. As a result of the circuit court's acceptance of Ratliff's invalid waiver of counsel, Ratliff was

left without an attorney at the guilty plea stage and entered a blind guilty plea without a valid waiver of counsel. Consequently, Ratliff's blind guilty plea was also invalid because he was "deprived of his constitutional right to counsel during critical stages of the criminal proceeding." See *id.* ¶ 22. This denial of Ratliff's constitutional right to counsel is a structural error. See *Gonzalez-Lopez*, 548 U.S. at 148-49.

¶ 138    Finally, the majority asserts that the test we employed in *People v. Moon*, 2022 IL 125959, ¶ 30, for analyzing structural error under the second-prong plain error doctrine is to " 'look to the type of errors that the United States Supreme Court has identified as structural to determine whether the error being considered is comparable.' " *Supra* ¶ 39 (quoting *Moon*, 2022 IL 125959, ¶ 30). Among the structural errors identified by the United States Supreme Court is the denial of counsel. See *Gonzalez-Lopez*, 548 U.S. at 149 ("Such [structural] errors include denial of counsel ***." (citing *Gideon*, 372 U.S. 335). I can think of no more egregious structural error than depriving Ratliff of counsel and accepting his uncounseled blind guilty plea. See *Allen*, 895 F.2d at 1580 ("Acceptance of an invalid waiver in violation of a defendant's Sixth Amendment rights necessarily leaves him entirely without the assistance of counsel at trial." (Internal quotation marks omitted.)); *Gonzalez-Lopez*, 548 U.S. at 149. It would be a miscarriage of justice to hold that Ratliff waived his constitutional right to counsel when he was not properly informed that he had the right, while excusing the circuit court's failure to meet its burden of ensuring Ratliff's fundamental right to counsel was preserved at every critical stage, including at the guilty-plea stage. *Brown*, 2017 IL 121681, ¶ 25; *Spano*, 360 U.S. at 321.

¶ 139                    D. Supreme Court Rule Amendments

¶ 140    This case presents an opportunity for this court to review the rules and the procedures our circuit courts follow when providing admonishments and when accepting guilty pleas. Such a review is important because "[p]leas account for nearly 95% of all criminal convictions." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); see Note, Stephanie Stern, *Regulating the New Gold Standard of Criminal Justice: Confronting the Lack of Record-Keeping in the American Criminal Justice System*, 52 Harv. J. on Legis. 245, 245 (2015) (97% of federal convictions and 94%

of state convictions stem from guilty pleas). Additionally, 75% of all defendants in state penitentiaries, many of whom have pleaded guilty, have not finished high school. *See* Caroline Wolf Harlow, Bureau of Justice Statistics, *Education and Correctional Populations* 3 (2003), https://bjs.ojp.gov/content/pub/pdf/ecp.pdf [https://perma.cc/N6NA-S8PN]. Ratliff is included within this class of state defendants because his pretrial sentence investigation (PSI) revealed that he had not graduated from high school and he had not obtained a GED. Therefore, the question this court must address is whether the circuit court's admonishment procedure and its procedure for accepting guilty pleas from state defendants with limited education provides them with due process and ensures their right to counsel. The answer to this question is no.

¶ 141    I would resolve the due process problem by having circuit courts take the following action: (1) all admonishments would be in writing, including those given pursuant to Rules 401, 402, and 604, and (2) the defendants would be given a copy of the admonishments and one or two hours to review the admonishments before they are given by the circuit court. I would resolve the state defendants' right-to-counsel problem by amending the rules to provide that defendants shall be represented by counsel during all admonishment and guilty plea proceedings. The defendants would review the written admonishments with their attorneys, and those defendants who are proceeding *pro se* would be provided with standby counsel to answer any questions before the court gives admonishments or accepts a plea. Finally, by providing each defendant with a copy of the admonishments and by giving the defendants an opportunity to review the admonishments with counsel, the defendants would be in a much better position to ask the judge questions at each admonishment and plea hearing.

¶ 142    This case also teaches this court that we need a statewide public defender program so a judge has a larger pool of attorneys to choose from when the defendant and public defender have a conflict or when the defendant accuses his local public defender of threatening him. Finally, while the above recommendations do not cure all the due process and right-to-counsel problems, these recommendations will assist defendants with limited education and resources to receive all the process they are due.

¶ 143                                    E. Conclusion

¶ 144        In sum, I would hold that the appellate court had jurisdiction to review the guilty plea and waiver of counsel orders, as both orders were steps in the procedural progression leading to the order denying Ratliff's motion to reconsider sentence. *Bingham*, 2018 IL 122008, ¶ 16; *In re Marriage of Arjmand*, 2024 IL 129155, ¶ 27; *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23; *Rivera Construction Co.*, 863 F.2d at 298; *Burtell*, 76 Ill. 2d at 435-36; *Elfman Motors, Inc.*, 567 F.2d at 1254; *Foman*, 371 U.S. at 181. I would also hold that, because the record establishes that Ratliff's uncounseled guilty plea was entered into unknowingly and unintelligently, the plea violated his constitutional rights and was void, obviating the need to file a Rule 604(d) motion. See *McCarthy*, 394 U.S. at 466. Additionally, the court's acceptance of the uncounseled, unknowing, and unintelligent guilty plea constitutes reversible error. See *Brady*, 397 U.S. at 748; *Rossillo*, 853 F.2d at 1067. Finally, I would hold that the circuit court's deprivation of counsel constituted structural error. See *Gonzalez-Lopez*, 548 U.S. at 148-49. Accordingly, I would reverse the judgment of the appellate court, vacate Ratliff's conviction, and remand the cause to the circuit court for a new trial.