2025 IL App (2d) 230071-UB
No. 2-23-0071
Order filed May 7, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-174 |
| LENNY GASTON, | ) ) ) | Honorable Christen L. Bishop, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices McLaren and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Second-prong plain-error review did not apply to defendant's forfeited contentions, because (1) defendant did not clearly show that his waiver of counsel was not intelligent and voluntary and (2) the failure to substantially comply with the waiver-of-counsel admonishments in Illinois Supreme Court Rule 401(a) is not structural error.

¶ 2   Defendant, Lenny Gaston, entered a fully negotiated guilty plea to one count of criminal sexual assault (720 ILCS 5/11-1.20(a)(4) (West 2014)) and was sentenced to 10 years in prison. He moved to vacate the judgment and withdraw the plea. The trial court denied the motion. On appeal, we remanded for compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).

*People v. Gaston*, No. 2-19-0277, ¶ 8 (2021) (unpublished summary order under Illinois Supreme Court Rule 23(c)). On remand, after defendant and his appointed counsel could not agree on what issues to raise in a new postjudgment motion, the trial court allowed defendant to proceed *pro se*. The court then denied his motion. Defendant appealed, contending that, on remand, (1) the trial court and defense counsel denied defendant his constitutional right to counsel and (2) the court did not provide the required admonishments under Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) for a valid waiver of counsel. Defendant had forfeited both issues, but we reached the Rule 401(a) issue under the plain error rule and held that the trial court failed to adequately admonish defendant. *People v. Gaston*, 2024 IL App (2d) 230071-U, ¶¶ 24, 30. Because that issue was dispositive, we reversed and remanded without addressing the first issue. *Id.* ¶¶ 23, 36. Thereafter, our supreme court issued a supervisory order directing us to vacate our judgment and consider whether *People v. Ratliff*, 2024 IL 129356, required a different outcome on the Rule 401(a) issue. *People v. Gaston*, No. 130525 (Ill. Jan. 29, 2025). We ordered supplemental briefings from the parties on the impact of *Ratliff*. Having received those briefs and reviewed *Ratliff*, we now affirm.

¶ 3                                          I. BACKGROUND

¶ 4        On February 11, 2015, a grand jury indicted defendant on 14 counts of various offenses against the victim in 2014. The trial court appointed Eric Rinehart, a special assistant public defender, to represent defendant.

¶ 5        On October 11, 2017, at a hearing a few days before the scheduled trial date, defendant appeared with Rinehart. Defendant told the trial court that he wanted to "fire [Rinehart] and get another lawyer due to ineffective [assistance of] counsel." He said that he had asked Rinehart to get DNA evidence retested, but Rinehart had refused. In response, Rinehart told the court that the evidence had been retested, but he had decided not to introduce the results at trial. Defendant

replied that Rinehart had not shared discovery with him and had refused to file motions that defendant requested. Defendant clarified that he did not want to represent himself but, rather, wanted a new attorney. The court denied his request.

¶ 6    After a recess, the parties presented an agreement under which defendant would plead guilty to one count of criminal sexual assault, the State would dismiss the remaining charges, and the trial court would sentence defendant to 10 years in prison. After hearing a factual basis for the plea and admonishing defendant (see Ill. S. Ct. R. 402(a) (eff. July 1, 2012)), the court accepted the agreement and entered judgment accordingly.

¶ 7    On October 13, 2017, defendant, by Rinehart, filed a motion to withdraw the guilty plea, but defendant withdrew the motion two days later. On November 14, 2017, defendant moved *pro se* to withdraw his plea. On January 17, 2018, he filed another *pro se* motion to withdraw his plea. On May 29, 2018, defendant filed an amended *pro se* motion to withdraw his plea. His court-appointed attorney, John Murphy,[1] filed a supplemental motion and a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). Murphy adopted the arguments in defendant's *pro se* motions and added a new contention. The trial court denied the supplemental motion to withdraw.

¶ 8    On appeal, we held that Murphy failed to file a proper Rule 604(d) certificate. We remanded for the filing of a valid certificate, the opportunity to file a new motion, and a new hearing. *Gaston*, No. 2-19-0277, ¶ 8.

---

[1]In the interim, Rinehart was elected Lake County State's Attorney. Thereafter, the State was represented by a special prosecutor from the State's Attorney Appellate Prosecutor.

¶ 9    Between the appeal and the issuance of our mandate, defendant filed several more *pro se* documents not related to the issues on remand. The trial court reappointed Murphy to represent defendant in the proceedings on remand.

¶ 10    On November 30, 2021, at a virtual hearing, the trial court decided "to ask [defendant] *** once and for all if he want[ed] a lawyer." Defendant responded that Murphy was "turning a blind eye" to his *pro se* motions, which alleged that he had been denied due process "from the beginning." The court told defendant that Murphy was obligated to file only motions that, in his professional judgment, had arguable merit. Defendant said that Murphy was not listening to his complaints of error, particularly that Rinehart had been ineffective regarding the DNA evidence. The court reminded defendant that the proceedings were limited to whether he should be allowed to withdraw his guilty plea. When asked if he wanted Murphy to stay as his counsel, defendant said yes. The court continued the cause to February 8, 2022.

¶ 11    On February 8, 2022, at a virtual hearing, Murphy told the court that he had filed a Rule 604(d) certificate but that defendant then "made some representations he needed to review the motion or discuss something with [Murphy]," which led Murphy to believe that he now had to file "a new 604D." Murphy explained that defendant wanted the motion to withdraw the plea to include matters that Murphy believed were inappropriate for inclusion, such as a jurisdictional issue that Murphy opined had no merit. After further discussion, defendant and Murphy reached an "impasse." Murphy believed that defendant did not want to speak with him anymore yet did not want to proceed *pro se*.

¶ 12    The trial court told defendant that the parties were there "solely [on] the [Rule] 604[(d)] issue and the motion to withdraw the plea." Defendant responded that he had repeatedly asked Murphy "to amend the motion to withdraw any issue in this case [*sic*] like due process rights."

The court reiterated that the proceedings on remand were limited to whether to allow defendant to withdraw his plea. Defendant said that he wanted Murphy to include other matters because Rule 604 stated that any issue not raised would be waived. The court allowed Murphy and defendant one more opportunity to discuss the case. The court set March 8, 2022, for status, at which time defendant could proceed *pro se* if he so wished. The following colloquy ensued:

"THE DEFENDANT: I have something to say. May I reads [*sic*] this for the—

THE COURT: No, not at this time because today was only for status.

THE DEFENDANT: You refusing me to read these documents?"

¶ 13   The trial court stated that defendant would receive "one more chance" to talk to Murphy. The hearing continued:

"THE DEFENDANT: I don't need no more time to do that.

THE COURT: Then you are asking then that you proceed on your own?

THE DEFENDANT: I am asking the Attorney General—(unintelligible)

THE COURT: Sounds like at this time, Mr. Murphy, I am going to discharge you ***. [Defendant] has clearly on the record stated that he does not want Mr. Murphy to represent him. *** So Mr. Murphy you are discharged from the case.

That means, Mr. Gaston, I am not appointing an attorney[.] *** So you can have [Murphy]. *** Or you can represent yourself. Those are your options. ***.

THE DEFENDANT: I don't have a choice. Let me talk one more time. I don't have a choice. I guess I am forced to do whatever you want me to do, right?

THE COURT: You're not forced to do anything. *** So are you telling me you would like to have [Murphy] talk to you one more time?

THE DEFENDANT: I don't have a choice. Yes.

MR. MURPHY [(DEFENSE COUNSEL)]: I will arrange a phone call. We'll be back then March 8."

¶ 14   On March 8, 2022, at a virtual hearing, Murphy told the trial court that he had tried to explain to defendant why he could not address issues other than the challenge to the guilty plea, but defendant "disagree[d] vehemently." Defendant responded that he had simply asked Murphy whether the motion to withdraw the plea "could *** add [the] State being un[c]onstitutional, and my rights have been violated. I was forced to take this, to take this plea deal. That's all I was trying to get him to understand." The court asked defendant whether he could work with Murphy. Defendant said, "I can."

¶ 15   This exchange followed:

"THE COURT: So Mr. Murphy, *** it sounds like you were not able to have much of a discussion at all. Are you in a position to stand on the motion filed or is that part of the problem, ***?

MR. MURPHY: Judge, the problem I am going to run into, as I said, I was able to read the brief submitted. I cannot file a 604D. When I reviewed all contentions of error in the plea and sentencing and made amendments, when [defendant] continuously said we have not discussed any of those things, then I can't file that 604D because he's telling me there are more things. I am happy to listen. I would love to research them so we could submit a completed motion to withdraw."

The court continued the matter for Murphy to have further discussions with defendant.

¶ 16   At an April 26, 2022, hearing, Murphy told the trial court that he needed to file an amended Rule 604(d) certificate stating in part that he had communicated with defendant. However, he could not do so because they were still at an impasse over what issues to raise in the motion to

withdraw the plea. Murphy added that defendant kept asking him for "documentation" that he did not possess or consider relevant to the motion. Defendant told the court that he and Murphy were at an impasse because Murphy refused his requests to obtain "certain documentation" and "investigate things." Specifically, defendant claimed that, on August 20, 2021, he had signed a "contract" with the police department that obligated the State to dismiss the charges. He wanted Murphy to obtain this document and present it to the court. In response, Murphy told the court that the document said only that defendant would hold the police harmless for any injury that he might have suffered in custody.[2] The court again reminded defendant that the motion to withdraw had to be filed, heard, and decided before the court could address the other issues that defendant wished to raise. Murphy agreed. Defendant, however, insisted that the plea deal was irrelevant because of the "contract." The court agreed to hold one final hearing before deciding whether to discharge Murphy.

¶ 17 The cause was continued several more times. On November 22, 2022, at a virtual hearing, Murphy stated that he and defendant were "at an impasse as to what should be included" in the motion to withdraw the guilty plea: defendant wanted to include "collateral issues" that Murphy believed were improper. Defendant stated that any issue not raised in the motion would be waived and that he had "a right to attach anything," including "a due process violation which should have been brought up on a motion to squash [*sic*] the motion to suppress evidence and dismiss the indictment [*sic*]." Defendant complained that Murphy would not file "new supplemental motions to withdraw pleas" or motions "to squash [*sic*] the arrest and suppress evidence, to dismiss the

---

[2]The document is in the record on appeal. We agree with Murphy's characterization of it.

indictment." The court reiterated to defendant that these issues were not before the court and that Murphy was obligated not to raise frivolous issues. The hearing continued:

"THE COURT: However, if you don't want [Murphy] to represent you on the motion to withdraw your plea, then I will discharge him, and you can represent yourself. But, otherwise, on this issue, the motion to withdraw the plea, we're going to have to let him do his job. He's your lawyer.

But if you don't want him, then I'll let you represent yourself *** I don't want this dragging on and on for you where then you've served all your time before you've even got your case up on appeal. ***.

So you need to decide. Do you want Mr. Murphy to represent you and proceed forward with the motion to withdraw the plea that is filed; or do you want to delay this further, up to you, and represent yourself?

THE DEFENDANT: Yes, I would like for him to get off my case. He's arguing something that is frivolous, Your Honor, that I filed November the 14th, 2017, May of— 29, 2018, [*sic*] *** but he don't [*sic*] want to file any additional motions that where [*sic*] I would have an added representation. *** What I'm filing now is a new amended motion, Your Honor, motion to withdraw.

THE COURT: Okay.

THE DEFENDANT: I'm stating all these facts in this case. I was forced to take this plea deal because *** I don't even see the discovery. I can't even see the discovery. How can I sit up here and defend myself when I've been denied due process—

THE COURT: All right. So—

THE DEFENDANT: —discovery.

THE COURT: All right. *** So it sounds like you want to discharge Mr. Murphy and that you want to—you're asking leave of Court to file an amended motion to withdraw your plea; is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Mr. Murphy, you are discharged."

¶ 18    On March 1, 2023, the trial court heard the previously filed motion to withdraw. The court began with this exchange:

"THE COURT: ***

I do want to confirm—I know I ask you every time, but [defendant] did have appointed counsel. Appointed counsel has been discharged. [Defendant] has informed me repeatedly that he prefers to represent himself.

Is that still the case, *** that you want to represent yourself in this matter?

THE DEFENDANT: I don't want to because I'm not a licensed attorney. The stuff that I asked my previous attorney to file that was very relevant to the case, they refused to do it. So I'm being forced to represent myself so I can bring these issues out ***."

¶ 19    The trial court recounted the history of the proceedings on remand and asked defendant, "So knowing you cannot choose your attorney and knowing, *** you did not want Mr. Murphy as your lawyer, are you wanting to proceed today representing yourself?" Defendant responded that he did not have a choice. The exchange continued:

"THE COURT: Okay. *** [T]he issue is whether the defendant has the requisite capacity to make an intelligent and knowing waiver of his right to a [*sic*] counsel. A court should consider the defendant's age, level of education, his mental capacity, and his prior involvement in legal proceedings.

The Court's previously admonished [defendant] about representing himself. I can note in looking at his age, level of education, mental capacity ***.

His—he files his own motions. He has filed extensive motions. That includes references *** to case law, to statutes. He has made discovery requests and has been able to clearly articulate several times for the record his stance, his position, and argue on his own behalf.

And so at this time I do believe that [defendant], for the reasons he stated, has waived his right to counsel in the sense of that counsel was to be provided in the sense of Mr. Murphy and that is not a counsel of his choosing or his liking, and so he is indicating, even if he feels it is by no choice of yours that, *** you're going to proceed today representing yourself?

THE DEFENDANT: Yes, ma'am."

¶ 20    After hearing evidence and argument, the trial court denied defendant's motion to withdraw his plea.

¶ 21    This timely appeal followed.

¶ 22                                   II. ANALYSIS

¶ 23    On appeal, defendant argues that, in the proceedings on remand, his right to counsel was violated in two respects. First, Murphy and the trial court forced him to proceed *pro se* by needlessly refusing to advance his case, based on the erroneous assumption that Murphy could not file a valid Rule 604(d) certificate until he and defendant agreed on what to raise in the accompanying motion. Second, his waiver of counsel was invalid because the court did not substantially comply with Rule 401(a).

¶ 24                                   A. Plain Error

¶ 25 Defendant did not argue below that the trial court denied him the right to counsel. He thereby forfeited the issue for purposes of appeal. See *People v. Bannister*, 232 Ill. 2d 52, 65 (2008). However, defendant invokes the plain error rule, which is "a well-established exception to forfeiture principles, allowing reviewing courts discretion to excuse a defendant's procedural default" (*People v. Moon*, 2022 IL 125959, ¶ 19). See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.").

> "[T]he plain error rule allows reviewing courts discretion to review forfeited errors under two alternative prongs: (1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Moon*, 2022 IL 125959, ¶ 20.

"Under both prongs, the burden of persuasion remains with the defendant." *Id.*

¶ 26 Defendant argues for review only under the second prong of the plain error rule. The supreme court "has equated second prong plain error with 'structural error.' " *Id.* ¶ 28 (quoting *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009)). "An error is typically designated as structural only if it necessarily renders a criminal trial fundamentally unfair or is an unreliable means of determining guilt or innocence." *Id.*

¶ 27 Only defendant's first contention on appeal is potentially reviewable under the second prong of the plain error rule. The denial of the right to counsel constitutes structural error (*People v. Ogurek*, 356 Ill. App. 3d 429, 433 (2005)); thus, defendant's argument that he was coerced into

proceeding *pro se* potentially warrants plain error review. However, there is no plain error review unless the reviewing court first finds clear or obvious error. See *People v. Sebby*, 2017 IL 119445, ¶ 49. For the reasons below (*infra* ¶¶ 30-34), we find that defendant has not established clear or obvious error; he has not clearly shown that he was coerced into proceeding *pro se* and thereby denied his right to counsel.

¶ 28    By contrast, as explained below, defendant's Rule 401(a) claim is not even potentially reviewable under the second prong of the plain error rule, because, as *Ratliff* holds, a Rule 401(a) violation is not structural error. *Infra* ¶¶ 36-43.

¶ 29                    B. Voluntary and Intelligent Waiver of Counsel

¶ 30    Defendant argues that, on remand, Murphy and the trial court held up the proceedings because the former refused to file a new Rule 604(d) certificate. Thus, defendant asserts, he was forced to give up his right to counsel in order to restart the case.

¶ 31    The State responds that the trial court did not abuse its discretion in accepting defendant's waiver of counsel, as defendant repeatedly insisted on raising issues that Murphy deemed frivolous and wholly unrelated to the sole issue on remand—whether his guilty plea was knowing and voluntary. We agree with the State.

¶ 32    A defendant may waive his right to counsel and proceed *pro se*, but only if he voluntarily and intelligently relinquishes that right. *People v. Baez*, 241 Ill. 2d 44, 115-16 (2011). The trial court's determination that the defendant has voluntarily and intelligently waived counsel is reviewed for an abuse of discretion. *Id.* at 116.

¶ 33    Here, defendant notes that, on remand, Murphy refused to file a Rule 604(d) certificate because he claimed defendant was insistent on raising claims Murphy believed were improper in a motion to withdraw the guilty plea—to which the proceedings were limited. Defendant argues

that Murphy's intransigence delayed the proceedings to the point where defendant reluctantly elected to continue without counsel, just to end the logjam. The State responds that the trial court did not abuse its discretion in accepting defendant at his word when he stated clearly that he wanted to proceed without counsel.

¶ 34    We cannot say that the trial court abused its discretion in granting defendant's explicit request to proceed *pro se*. A reluctant request is not necessarily an involuntary or unintelligent one. The court essentially provided defendant with exactly what he wanted: the ability to raise several issues that Murphy would not raise because he recognized that doing so would violate his professional obligation not to advance frivolous issues. See Ill. R. Pro. Conduct (2010) R. 3.1 (eff. Jan. 1, 2010). We also note that defendant could have broken any logjam in the proceedings by simply deferring to his counsel's expertise about what issues could be raised. Because defendant has not established clear or obvious error, plain error review is unavailable. Thus, the forfeiture stands.

¶ 35                    C. Rule 401(a) Admonishments

¶ 36    Defendant argues that the trial court failed to comply substantially with Rule 401(a) in accepting defendant's waiver of counsel.

¶ 37    Rule 401(a) reads:

"Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 38 The trial court must provide Rule 401(a) admonishments when the court learns that the defendant is choosing to waive counsel. *People v. Langley*, 226 Ill. App. 3d 742, 750 (1992). Substantial compliance with Rule 401(a) is sufficient (*People v. Campbell*, 224 Ill. 2d 80, 84 (2006)), particularly when the defendant appears to have a " 'high level of sophistication.' " (*People v. Thomas*, 335 Ill. App. 3d 261, 264 (2002) (quoting *People v. Meeks*, 249 Ill. App. 3d 152, 172 (1993))).

¶ 39 In arguing for review of this issue under the second prong of the plain error rule, defendant relies on a line of cases holding that the failure to comply with Rule 401(a) affects a "substantial" (*People v. Jiles*, 364 Ill. App. 3d 320, 328 (2006); *Langley*, 226 Ill. App. 3d at 749) or "fundamental" right (*People v. Stoops*, 313 Ill. App. 3d 269, 273 (2000); *People v. Robertson*, 181 Ill. App. 3d 760, 763 (1989)).

¶ 40 In *Ratliff*, our supreme court, in a plurality opinion, found that it lacked jurisdiction over the defendant's appeal. Yet, the court opted to exercise its supervisory authority to address whether the trial court's failure to substantially comply with Rule 401(a) in receiving the defendant's waiver of counsel was reviewable as second prong plain error. *Ratliff*, 2024 IL 129356, ¶¶ 18-20. The appellate court had reached the Rule 401(a) issue despite the defendant's forfeiture, "because the right to counsel is so fundamental that the failure to properly issue Rule 401(a) admonishments amounts to a reversible second-prong plain error." *People v. Ratliff*, 2022 IL App (3d) 210194-U,

¶ 11. The plurality opinion overruled the *Robertson* line of cases and held that failing to substantially comply with Rule 401(a) does not constitute structural error. *Ratliff*, 2024 IL 129356, ¶¶ 43-46. The plurality opinion explained how the denial of the right to counsel is structural error (*id.* ¶ 38) while a simple Rule 401(a) violation is not:

> "The admonitions required under Rule 401(a) lack the historical pedigree of the jury oath and jury polling. The committee comments to Rule 401 note that the rule was adopted in 1967 and amended in 1970. See Ill. S. Ct. R. 401, Committee Comments (rev. Apr. 27, 1984). Further, while Rule 401(a) is 'a safeguard that is designed to help ensure that the defendant is afforded an important constitutional right' [citation], the rule is tangential to the constitutional right itself. Nothing in the federal or state constitutions requires any admonitions before a defendant may waive the right to counsel, which explains why we have repeatedly held that the trial court need only substantially comply with the rule. [Citations.] The fact that substantial compliance is sufficient indicates that a Rule 401(a) violation, if pressed in a postplea or posttrial motion, would be subject to a record-intensive and prejudice-focused harmless error analysis. If such a violation rose to the level of structural error, strict compliance would be required. Stated differently, it is conceivable that a defendant could knowingly and voluntarily waive the right to counsel, proceed *pro se*, and still have a fair trial without the admonitions." *Id.* ¶ 44.

¶ 41 Defendant argues, however, that the plurality opinion in *Ratliff* is not binding because only three of the seven justices signed on to it and no remaining justice concurred in the repudiation of the *Robertson* line of cases. We disagree.

¶ 42 Defendant is correct that the opinion of a mere plurality, by itself, "is not binding precedent." *Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 269 (2007); *People v. Collins*, 2024 IL

App (2d) 240005, ¶ 30 (citing *Marks v. United States*, 430 U.S. 188, 193 (1977)). In *Marks*, the United States Supreme Court stated, "When a fragmented Court decides a case *and no single rationale explaining the result enjoys the assent of five Justices*, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.' " (Emphasis added.) *Marks*, 430 U.S. at 193 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)).

¶ 43 However, defendant is incorrect in asserting that the overruling of the *Robertson* line of cases did not enjoy the assent of a majority of the supreme court's justices. Although only three justices joined in the opinion itself, a fourth justice concurred in part and dissented in part, disagreeing with the plurality on the jurisdictional issue but stating, "I agree with the majority's [*sic*] opinion in all other respects." *Ratliff*, 2024 IL 129356, ¶ 84 (Overstreet, J., concurring in part and dissenting in part). Thus, a majority of the supreme court held that a Rule 401(a) violation is not cognizable as second prong plain error. Therefore, we uphold the forfeiture of defendant's Rule 401(a) argument.

¶ 44                                     III. CONCLUSION

¶ 45 For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 46 Affirmed.