2025 IL App (1st) 230584-B

FIFTH DIVISION
May 30, 2025

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

No. 1-23-0584

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 424 |
| | ) | |
| RASHAD H. WILLIAMS, | ) | Honorable |
| | ) | Geraldine A. D'Souza, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Mitchell and Lyle concurred in the judgment and opinion.

**OPINION**

¶ 1 Following a bench trial, defendant Rashad H. Williams was convicted of aggravated vehicular hijacking with a firearm and sentenced to 30 years in prison. On appeal, Mr. Williams contends that the trial court failed to properly admonish him pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before accepting his waiver of counsel. In our initial decision, we agreed that it had, vacated Mr. Williams's conviction, and remanded this case for a new trial. *People v. Williams*, 2024 IL App (1st) 230584-U, ¶ 42. The State petitioned the Illinois Supreme Court for leave to appeal that decision.

¶ 2 On March 26, 2025, the court denied the petition, but issued a supervisory order remanding the matter to us and directing us to (1) vacate our judgment, (2) "consider the effect of [its] opinion in *People v. Ratliff*, 2024 IL 129356 [(plurality opinion)], on the issue of whether defendant's

argument that the trial court failed to properly admonish him under Rule 401(a) is reviewable as second prong plain error," and (3) "determine if a different result is warranted." *People v. Williams*, No. 131286 (Ill. Mar. 26, 2025) (supervisory order). Having done so, we now conclude that a portion of the *Ratliff* court's opinion, holding that a claim like the one Mr. Williams makes is not cognizable as plain error, requires that we now affirm his conviction on appeal.

¶ 3                                   I. BACKGROUND

¶ 4      Mr. Williams was charged by indictment in this case, case No. 17 CR 424, with one count of aggravated vehicular hijacking for allegedly taking a motor vehicle from Cerone Van on or about November 9, 2016, by force or threat of force while armed with a firearm. Mr. Williams was separately charged, in a 41-count indictment in case No. 17 CR 425, with multiple offenses committed on or about November 26, 2016, including the aggravated vehicular hijacking of a different victim, first degree murder, attempted first degree murder, being an armed habitual criminal, and the aggravated discharge of a firearm. These cases proceeded simultaneously in the trial court before the same judge.

¶ 5      In October 2018, the State advised the trial court that it was electing to try Mr. Williams in case No. 17 CR 425 first. On August 20, 2019, Mr. Williams asked the court if he could represent himself. The court told Mr. Williams he could represent himself but reminded him that he had a right to counsel, noted that he would be facing experienced attorneys, and explained that he faced imprisonment for "the rest of [his] life." The court ascertained that the extent of Mr. Williams's education was a "little bit of high school."

¶ 6      Mr. Williams was informed that he faced imprisonment for 76 years to natural life, based on a minimum of 45 years for murder and 31 years for attempted murder. These, of course, were charges brought against him in case No. 17 CR 425, the matter the State had elected at that point

to proceed with first. When the State mentioned the aggravated vehicular hijacking charge in that case, defense counsel said, "[T]hat was on a separate date so I think that would be concurrent." The court informed Mr. Williams that aggravated vehicular hijacking was a Class X felony with a mandatory firearm enhancement but said nothing about a specific sentence. The court described the roles counsel would perform for Mr. Williams and reiterated that he had the right to represent himself, to have counsel, and to have counsel appointed if he was indigent. When Mr. Williams affirmed that he wanted to represent himself, the court accepted his waiver and granted his previously appointed counsel leave to withdraw.

¶ 7    In September 2021, Mr. Williams presented a motion for reduction of bond. The court noted that Mr. Williams was "being held on two matters," with a bond of "250,000 D on the ag[gravated] vehicular hijacking" and "no bail on the first degree murder." Mr. Williams agreed. The court then asked if he was "requesting a bond reduction to one or both matters," and he replied, "Both matters." The State's proffer for the "somewhat intertwined" cases described the alleged aggravated vehicular hijacking of Mr. Van on November 9, 2016, as well as the various alleged offenses of November 26, 2016. The court denied the motion to reduce bond.

¶ 8    The State filed a motion for a joint trial or, in the alternative, for evidence regarding the single count of aggravated vehicular hijacking in this case, case No. 17 CR 424, to be allowed as other-crimes evidence in the elected case, case No. 17 CR 425. The State also requested, whether or not a joint trial was allowed, to present evidence of an uncharged incident on November 14, 2016, also involving Mr. Van's car, as other-crimes evidence. The motion was argued on March 10, 2022. Mr. Williams made clear, in responding to the State's argument, that it was his understanding, based on the 41-count indictment in case No. 17 CR 425, that he had only been indicted for the events of November 26, 2016, and not for any alleged acts on November 9, 2016.

In denying the State's motion for joinder and granting its other-crimes motion, the court explained to Mr. Williams that he had indeed been separately indicted in this case, case No. 17 CR 424, for the aggravated vehicular hijacking that occurred on November 9, 2016. Mr. Williams stated that he did not have a copy of that indictment, and the court said it would make sure the State provided him with one.

¶ 9 In April 2022, the court again reminded Mr. Williams, as it had at other court dates, of his "right to have a free attorney representing [him]." Mr. Williams declined the court's offer to appoint counsel and demanded trial. He waived his right to a jury trial in case No. 17 CR 425, and the court set a May 2022 trial date for that case and continued case No. 17 CR 424, the November 9, 2016, hijacking case, "by agreement."

¶ 10 On the date set for trial in case No. 17 CR 425, Mr. Williams and the State answered ready, but Mr. Williams withdrew his jury waiver. The court again reminded Mr. Williams of his right to appointed counsel, and Mr. Williams confirmed that he still wanted to proceed *pro se*. The court scheduled jury selection for May 27, 2022.

¶ 11 When that day arrived, the State informed the court that it was changing its election and would try case No. 17 CR 424, the November 9, 2016, hijacking case, first. Mr. Williams objected, but the court told him that the State had the right to elect which case to proceed on first. The case was continued for trial on May 31, 2022. On that date, the court reminded Mr. Williams of his "right to have an attorney *** appointed for [him] for free" and told him that it was "not too late" to have an attorney appointed. The court specified the many ways in which an attorney could help Mr. Williams in his defense but no admonishments were given as to the sentence that Mr. Williams could receive in this case, which was No. 17 CR 424, the November 9, 2016, hijacking case. Mr. Williams again declined the court's offer to appoint counsel, and a jury was selected, with trial to

begin the next day, June 1, 2022.

¶ 12     When the parties reassembled in court on June 1, 2022, Mr. Williams told the court that although a jury had already been chosen, he wanted a bench trial. The court asked Mr. Williams if he understood that he and the State were answering ready for trial, and he said he understood. Following additional admonishments regarding what the right to a jury entailed, the court accepted Mr. Williams's jury waiver and commenced with a bench trial.

¶ 13     At trial, Mr. Van testified that, on November 9, 2016, he was at a gas station putting air in the tires of his customized white Chevrolet Malibu when he looked up and saw Mr. Williams sitting in the driver's seat. Mr. Williams then pointed two firearms at Mr. Van and drove away. As Mr. Van followed the Malibu in a friend's vehicle, he called 911 to report the hijacking. He gave his name not as Van, but as Tolbert, his cousin whose name was on the Malibu's title. Mr. Van testified that he did so because he had a child support warrant against him at the time, in a matter that he said had since been resolved.

¶ 14     Later in November 2016, Mr. Van's friends informed him of sightings of his distinctive Malibu. Mr. Van went to the vicinity of one such sighting on November 26, 2016, where he saw his Malibu and called the police, again giving his name as Tolbert. Mr. Van saw the police arrive, the Malibu crash, and Mr. Williams flee the Malibu on foot pursued by an officer. Mr. Van later learned that a shooting occurred that day related to the pursuit of the person who had taken his car, so he and Mr. Tolbert went together to the police station. On cross-examination, Mr. Van denied that he sold the Malibu to anyone and denied telling a detective that he was in the process of buying the Malibu from Mr. Tolbert.

¶ 15     Mr. Williams testified that Mr. Van sold him the Malibu on November 9, 2016. On cross-examination, Mr. Williams admitted possibly driving the Malibu on November 26, 2016, when he

crashed it in Mr. Van's presence, but he was probably "high off PCP" that day and could not remember.

¶ 16    Following closing arguments, the court found Mr. Williams guilty of aggravated vehicular hijacking on November 9, 2016. The court asked Mr. Williams if he wanted counsel for sentencing, reminding him that it would appoint counsel if he could not afford an attorney. Mr. Williams replied that he would immediately present his own oral posttrial motion.

¶ 17    In that motion, Mr. Williams argued the insufficiency of the trial evidence, noting there was no security video from the carjacking scene and arguing that Mr. Van was not more credible than himself. The court denied the motion and continued the case to June 27, 2022, for sentencing.

¶ 18    On that day, the court reminded Mr. Williams of his right to counsel for the posttrial and sentencing proceedings, his right to continue representing himself, and his right to have counsel appointed if he could not afford an attorney. The court asked if he understood that he faced a substantial mandatory prison sentence. Mr. Williams said, "I don't believe that I was informed of how much time." The court stated that he faced a prison term of 6 to 30 years, plus a 15-year firearm enhancement, for a total of 21 to 45 years of imprisonment. After noting that Mr. Williams knew the nature of the charge against him due to the trial, and now knew his possible sentence, the court asked if he still wanted to represent himself. Mr. Williams said that he did and that he had a written posttrial motion. The court granted him leave to file it.

¶ 19    In the written motion to vacate his conviction, Mr. Williams argued that the verified complaint in this case was signed by Mr. Tolbert rather than Mr. Van, and therefore the indictment should be dismissed for having a fundamental flaw that could not be amended. The original posttrial motion also asserted that Mr. Williams "was not admonished properly prior to trial and informed that the complaining victim was *** [Mr.] Tolbert or how much time [Mr. Williams]

could be sentenced to for the offense alone without the joinder to" case No. 17 CR 425. Mr. Williams amended his motion in September 2022 to argue that the fundamental flaw in the information, and thus the indictment, was that the State did not file Mr. Tolbert's original complaint. The amended motion did not contain the claim that he had received incomplete admonishments prior to waiving his right to counsel.

¶ 20    At argument on the motion, held on July 5, 2022, Mr. Williams remarked that "[m]aybe [he] should have had counsel to advise [him]," who might have seen the purported fundamental flaw in the charge. The court told him he could still have counsel "help [him] re-craft [his] motion or file additional motions." The court also reminded him that he faced 21 to 45 years in prison, then asked if he wanted counsel appointed. Mr. Williams answered affirmatively and agreed to enter and continue his motion. The court appointed counsel after finding Mr. Williams indigent. When the court asked Mr. Williams if he also wanted counsel appointed in case No. 17 CR 425, where he faced 45 years to natural life imprisonment for murder, Mr. Williams stated that he was declining "at th[at] time."

¶ 21    The case was continued to August 8, 2022, for sentencing in this case and a status hearing in case No. 17 CR 425. When the court asked Mr. Williams for his decision regarding counsel, Mr. Williams responded by asking, "[W]hat happened with the motion to vacate arrest and conviction?" The court said, "Sir, on the last court date you said you want[ed] an attorney appointed and the public defender was appointed. I'm not sure where they are now." The court then passed the case for counsel to appear. When the case was recalled, Mr. Williams said he was not waiving his right to present his motion to vacate. The court said he would have to wait for counsel, who was not available until August 11, 2022, and Mr. Williams said that if that was so, he wanted to proceed *pro se*. The court told Mr. Williams that he had already asked for a public

defender and that he could not "go back and forth in order to be dilatory and keep the court proceedings from going forward." Mr. Williams replied that he wanted to proceed *pro se* because he did not want the case delayed by counsel not being ready. The court said, "I'm not going to argue with you," and continued the case to August 11, 2022.

¶ 22    Counsel was present on that date, said that he needed to review the case file before he could do anything, and declined Mr. Williams's request to meet with him immediately. Mr. Williams then asked to represent himself again. When the court remarked that his right to counsel did not include "the right to play games," Mr. Williams noted that the court had told him counsel could amend his motion to vacate but now he could not meet with counsel to discuss it. Noting that counsel would have the opportunity to meet with Mr. Williams in person, the court continued the case to September 22, 2022.

¶ 23    On September 22, 2022, Mr. Williams reiterated that he wanted to proceed *pro se* in this case and present his motion to vacate. The court read the charge in this case, told Mr. Williams that he faced 21 to 45 years in prison, and told him that he had the right to appointed counsel at no cost because he was indigent. The court accepted Mr. Williams's waiver of counsel in this case and granted counsel leave to withdraw. The court then granted Mr. Williams leave to file his amended motion to vacate his conviction.

¶ 24    On December 30, 2022, the court heard and denied Mr. Williams's amended motion to vacate. Mr. Williams also unsuccessfully challenged the firearm enhancement on the basis that the evidence was insufficient to prove he was armed with a firearm.

¶ 25    The presentence investigation report showed that Mr. Williams did not complete high school, served juvenile probation for residential burglary, and had three convictions for weapons offenses. Following a sentencing hearing where Mr. Williams again declined the court's offer to

appoint counsel, the court sentenced him to 30 years in prison. Mr. Williams was admonished that he had to file a postsentencing motion if he did not want to forfeit any challenge to his sentence, but he did not file such a motion.

¶ 26                                II. JURISDICTION

¶ 27     Mr. Williams was sentenced on December 30, 2022, and timely filed his notice of appeal that same day. We initially had jurisdiction over this appeal under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. Mar. 12, 2021), governing appeals from final judgments in criminal cases. It is now before us again on remand, pursuant to a supervisory order of our supreme court. *Williams*, No. 131286 (Ill. Mar. 26, 2025) (supervisory order).

¶ 28                                 III. ANALYSIS

¶ 29     On appeal, Mr. Williams contends that the trial court failed to properly admonish him, pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), before accepting his waiver of counsel. Criminal defendants have both the right to counsel and the right to self-representation. *People v. Marcum*, 2024 IL 128687, ¶ 43. The choice to represent oneself, however, must be made knowingly, intelligently, and voluntarily. *Id.* To ensure this, Rule 401(a) sets forth procedures the trial court must follow before accepting a waiver of counsel, including, pertinent here, an admonishment regarding " 'the minimum and maximum sentence prescribed by law' " that the defendant faces. *Id.* ¶ 44 (quoting (Ill. S. Ct. R. 401(a)(2) (eff. July 1, 1984)). Mr. Williams argues that the trial court failed to substantially comply with this rule because it never specifically informed him of the range of possible sentences for aggravated vehicular hijacking, the only charge he faced in this case, until posttrial proceedings.

¶ 30     The State does not dispute Mr. Williams's contention that none of the trial court's

admonishments included telling Mr. Williams the range of possible sentences for aggravated vehicular hijacking. Rather, the State argues that Mr. Williams forfeited his ability to assert this issue on appeal. The State acknowledges that Mr. Williams arguably raised improper admonishment in his initial posttrial motion but points out that he abandoned that motion to file an amended one, which included no such claim of error. As the State argues, it is well established that an amended motion supersedes the original motion. See *People v. Bernard*, 2014 IL App (2d) 130924, ¶ 10 (concluding that the filing of a new, combined motion to withdraw the defendant's guilty plea and reconsider her sentence superseded earlier motions seeking that relief); see also *People v. Cross*, 144 Ill. App. 3d 409, 412 (1986) (noting, with respect to an amended complaint, that "as a general rule, an amendment which is complete in itself and which makes no reference to [a] prior pleading supersedes it, and the original pleading ceases to be a part of the record, being in effect abandoned or withdrawn").

¶ 31    Mr. Williams's response is that even if he forfeited this issue by failing to include it in his amended posttrial motion, it should still be considered under the plain error doctrine. Pursuant to that doctrine, clear and obvious errors not properly preserved for appeal may still be reviewed if (1) the evidence was so closely balanced that the finding of guilt may have resulted from the error and not the evidence or (2) the error was structural—so serious that it affected the fairness of the trial and challenged the integrity of the judicial process. *People v. Bush*, 2023 IL 128747, ¶ 71. Mr. Williams relied on—and we were initially persuaded to follow—decisions of this court holding that the failure to substantially comply with Rule 401(a) is a structural error capable of review as second-prong plain error. See, *e.g.*, *People v. Brooks*, 2024 IL App (3d) 220407, ¶ 14; *People v. Khan*, 2021 IL App (1st) 190051, ¶¶ 60-61.

¶ 32    Our supreme court recently rejected the holding in those cases, however, in *Ratliff*, 2024

IL 129356, ¶¶ 34-46. The defendant in *Ratliff*, like Mr. Williams here, argued on appeal that the trial court had failed to substantially comply with Rule 401(a) before accepting his waiver of counsel. *Id.* ¶ 1. Because the defendant had not raised the issue in either his *pro se* motion to withdraw his guilty plea or the motion to reconsider his sentence that his appointed counsel later filed, the trial court had no opportunity to correct that purported error. *Id.* ¶ 28. Our supreme court considered the omission of that issue from the defendant's postplea motions to be a waiver—the "intentional relinquishment or abandonment of a known right or privilege" (*People v. Lesley*, 2018 IL 122100, ¶ 36)—as opposed to merely a forfeiture—the "failure to make the timely assertion of [a] right" (*id.* ¶ 37)—that completely barred assertion of the issue on appeal. *Ratliff*, 2024 IL 129356, ¶ 28. As the court reiterated, a waived issue is not cognizable on appeal, even if it qualifies as a "plain error." *Id.* ¶ 22 (citing *People v. Townsell*, 209 Ill. 2d 543, 545 (2004)).

¶ 33     To find the claim in *Ratliff* was waived rather than forfeited, the supreme court relied on Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024), which has no application here. That rule specifically provides that, in cases resulting in guilty pleas, any issue not raised in a motion to withdraw the guilty plea in the trial court "shall be deemed *waived*" on appeal. (Emphasis added.) Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). Because Mr. Williams did not plead guilty, his posttrial motions were governed instead by section 116-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-1 (West 2022)), which contains no such language. The failure to include a claim in a motion made under that section "results in forfeiture of that claim." *People v. Baez*, 241 Ill. 2d 44, 129 (2011) (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)). The portions of the court's *Ratliff* opinion concerning waiver thus plainly do not apply here.

¶ 34     However, the court in *Ratliff* went on to opine that "[e]ven if" the court had been presented, not with a case of waiver but one of forfeiture, the claim the defendant was making was simply

"not cognizable as second-prong plain error." *Ratliff*, 2024 IL 129356, ¶ 29. The *Ratliff* court concluded that the oft-repeated proposition that a failure to comply with Rule 401(a) is a structural error capable of second-prong plain error review had been created "out of thin air" by this court decades ago in *People v. Robertson*, 181 Ill. App. 3d 760 (1989). *Ratliff*, 2024 IL 129356, ¶ 34. The holding in that case had not been supported by caselaw or any principled analysis, the *Ratliff* court observed, but merely by the vague statement that " '[t]he right to counsel is so fundamental it is not lightly deemed waived.' " *Id.* ¶¶ 34-35 (quoting *Robertson*, 181 Ill. App. 3d at 763). Noting that *Robertson* and its progeny predated several significant advances in the court's plain error jurisprudence, the *Ratliff* court went on to conduct the correct analysis under those authorities. *Id.* ¶ 36.

¶ 35    The court began by reiterating that structural errors implicating the second prong of the plain error doctrine are now understood to comprise "a very narrow group" of errors that can never be deemed harmless because they "necessarily render[ ] a criminal trial fundamentally unfair" and "an unreliable means of determining guilt or innocence." (Internal quotation marks omitted.) *Id.* ¶ 37. While the six structural errors that have been specifically identified by the United States Supreme Court—"a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction"—do not necessarily comprise an exclusive list, the *Ratliff* court observed that it is instructive to compare any arguably structural error to these well-recognized ones. (Internal quotation marks omitted.) *Id.* ¶¶ 38-39.

¶ 36    Our supreme court held in *People v. Moon*, 2022 IL 125959, ¶¶ 31-32, 34, 62, for example, that the failure to administer a jury oath was akin to these recognized structural errors because the oath was "firmly rooted in American jurisprudence" and had a "long and storied history." It came

to the opposite conclusion in *People v. Jackson*, 2022 IL 127256, ¶¶ 33-34, 53, regarding the right to jury polling, which it viewed as a right bestowed only by judicial grace as "a safeguard *** to help ensure *** [the] important constitutional right *** [of] juror unanimity" and, as such, a right that was at best tangential to an important constitutional right.

¶ 37    Following its analysis in those cases, the *Ratliff* court concluded that the admonishments required by Rule 401(a) are a judicially created safeguard, designed to protect the right to counsel by making sure the relinquishment of that right is made knowingly, voluntarily, and intelligently. *Id.* ¶ 44. The right to receive those admonishments is, like a defendant's right to poll the jury, tangential to a fundamental right; it is not a fundamental right in and of itself. *Id.* If the failure to provide the admonishments in Rule 401(a) was indeed a structural error, the court explained, then strict, and not merely substantial, compliance with the rule would be required. *Id.*

¶ 38    The pronouncements regarding forfeiture made in *Ratliff* require that we affirm the trial court. The authorities we initially relied on to find that the court's error in admonishing Mr. Williams was structural are effectively overruled, and it is appropriate to honor Mr. Williams's forfeiture here. Failing to raise this claim in his amended posttrial motion, Mr. Williams is now unable to raise it on appeal.

¶ 39    Of course, the portion of the *Ratliff* decision opining on when structural error is available after an objection to admonishments has been forfeited, rather than waived, addresses a point not essential to the disposition of that case, since, in *Ratliff*, the court found that the objection had been waived. Thus, it is dicta. See *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 277-78 (2009) (defining *dictum*, singular, as any statement of a court "that is not necessarily essential to the decision and [thus] lacks the authority of adjudication" (internal quotation marks omitted)).

¶ 40    It is judicial *dicta*, however, because the question was argued by counsel and deliberately

passed upon by the court in that case. *Ammons v. Canadian National Ry. Co.*, 2019 IL 124454, ¶ 38 (citing *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993)). Judicial *dicta* is, as the supreme court itself has noted, "entitled to much weight, and should be followed unless found to be erroneous." (Internal quotation marks omitted.) *Id.* Indeed, even *obiter dicta*—remarks or opinions merely "uttered by the way"—though not binding on the court that made them as authority or precedent within the *stare decisis* rule, are, in the absence of any contrary decision by that court, still binding on lower courts. *Cates*, 156 Ill. 2d at 80. We are simply not free to disregard the pronouncements of our supreme court, even here, where it clearly could have decided the case before it without ever reaching this issue.

¶ 41    We also recognize that only three of the court's seven justices signed onto the plurality decision in *Ratliff*. However, as this court recently recognized in *People v. Gaston*, 2025 IL App (2d) 230071-UB, ¶ 41, the pronouncements made in that decision are still binding on us. Three justices joined the plurality opinion, in which they concluded that although the court lacked jurisdiction, it should nevertheless reach the merits of the appeal as an exercise of its supervisory authority. *Id.* ¶ 40. A fourth justice, dissenting only to the extent that he perceived no jurisdictional problem, joined the plurality " 'in all other respects.' " *Id.* ¶ 43 (quoting *Ratliff*, 2024 IL 129356, ¶ 84 (Overstreet, J., concurring in part and dissenting in part)). Thus, a majority of the justices on the court has issued the judicial *dicta* that binds us here.

¶ 42                              IV. CONCLUSION

¶ 43    Having reconsidered our decision in this appeal in light of *Ratliff*, 2024 IL 129356, we find that a different result is required. By omitting from his amended posttrial petition the argument that the trial court failed to admonish him pursuant to Rule 401(a) before accepting his waiver of counsel, Mr. Williams forfeited that issue on appeal, and the forfeiture of that claim is not one this

court may overlook as structural plain error. We therefore affirm Mr. Williams's conviction for aggravated vehicular hijacking with a firearm.

¶ 44    Affirmed.

**_People v. Williams_, 2025 IL App (1st) 230584**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CR-424; the Hon. Geraldine A. D'Souza, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Sally M. Cohen, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Brian K. Hodes, and Leon Farbman, Assistant State's Attorneys, of counsel), for the People. |